JEFFER MANGELS BUTLER & MITCHELL LLP
THOMAS M. GEHER (Bar No. 130588)
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-4308
Telephone:  (310) 203-8080
Facsimile:  (310) 203-0567
Email:      tgeher@jmbm.com

LAW OFFICES OF DAVID W. MEADOWS
DAVID W. MEADOWS (Bar No. 137052)
1801 Century Park East, Suite 1235
Los Angeles, California 90067
Telephone:      (310) 557-8490
Facsimile:      (310) 557-8493
Email:          david@davidmeadowslaw.com

Attorneys for Former Debtor and Debtor in Possession,
Beshmada, LLC, and its successor The Beshmada Liquidating
Trust

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BESHMADA, LLC,<br><br>            Debtor. | CASE NO.      2:09-bk-25523 BR<br><br>Chapter 11<br><br>**JOINT PRE-TRIAL STIPULATION** |
| 241 FIFTH AVE. HOTEL, LLC, a Delaware limited liability company, and HAZAK ASSOCIATES, LLC,  a New York limited liability company,<br><br>            Claimants,<br><br>v.<br><br>BRADLEY D. SHARP, TRUSTEE OF THE BESHMADA LIQUIDATING TRUST, as successor to Beshmada, LLC,<br><br>            Objecting Party. | Date:  February 3, 2015<br>Time: 10:00 a.m.<br>Ctrm: 1668 |

JMBM | Jeffer Mangels Butler & Mitchell LLP

**TO THE ABOVE ENTITLED COURT:**

Pursuant to Local Bankruptcy Rule 7016-1(b), Claimants 241 Fifth Ave. Hotel, LLC, a Delaware limited liability company, and Hazak Associates LLC, a New York limited liability company, and Objecting Party Bradley D. Sharp, Trustee of The Beshmada Liquidating Trust ("Sharp"), as successor to Beshmada, LLC, hereby stipulate, by and through their counsel of record, as follows.

**STIPULATED FACTS**

The following facts are admitted and require no proof:

A.    <u>The Parties and Procedural Facts</u>.

1.    Beshmada, LLC ("Beshmada") is a California limited liability company.

2.    Prior to the commencement of Beshmada's involuntary bankruptcy case, Ezri Namvar ("Namvar") was the manager of Beshmada and, during such period, Namvar controlled Beshmada.

3.    Hazak Associates LLC ("Hazak") is a New York limited liability company and was formed on March 6, 2007.

4.    The principals of Hazak were, and are, Dan Shavolian ("Shavolian"), Jack Hazan ("Hazan") and Albert Cohen ("Cohen").

5.    At all times, Shavolian was the manager of Hazak.

6.    241 Fifth Ave. Hotel, LLC, a Delaware limited liability company ("241 Delaware"), was formed on March 19, 2007.

7.    At all relevant times, the members of 241 Delaware were, and are, Beshmada, which holds a 50% membership interest, and Hazak, which holds a 50% membership interest.

8.    Prior to the commencement of Beshmada's involuntary bankruptcy case, the co-managers of 241 Delaware were Namvar and Shavolian.

9.    Prior to the commencement of Beshmada's involuntary bankruptcy case, the sole members of 241 Delaware's Executive Committee were Namvar and Shavolian.

PRINTED ON
RECYCLED PAPER
LA 11431716v3

10.    On June 19, 2009, an Involuntary Petition was filed against Beshmada by various creditors of Beshmada seeking to have Beshmada adjudicated and declared a chapter 7 debtor.

11.    On June 22, 2010, Beshmada stipulated to the entry of an Order for Relief. On July 1, 2010, the Bankruptcy Court approved such stipulation and entered an Order for Relief against Beshmada and converted Beshmada's chapter 7 bankruptcy case to a case under chapter 11 of the Bankruptcy Code.

12.    On October 11, 2013, the Bankruptcy Court entered an Order confirming a plan of liquidation with respect to Beshmada.  Pursuant to such confirmed plan, all assets and rights of Beshmada, including the right to object to proofs of claims, was transferred and assigned to The Beshmada Liquidating Trust.

13.    Bradley D. Sharp is the Trustee of The Beshmada Liquidating Trust.

B.    <u>Procedural Facts Re Proof of Claim Filed by 241 Delaware and Hazak</u>.

1.    On November 15, 2010, 241 Delaware and Hazak, jointly, filed a Proof of Claim against the bankruptcy estate of Beshmada, designated as Claim No. 18-1, in an "unliquidated amount" based upon "[Beshmada's] breach of Limited Liability Company Agreement of 241[Delaware]" (the "Original 241 Delaware Claim").  See, Sharp Exhibit No. 1.

2.    On July 15, 2013, Beshmada filed that "Notice of Objection and Objection by the Debtor and Debtor in Possession to Proof of Claim No. 18-1 Filed by Hazak Associates, LLC" objecting to the Original 241 Delaware Claim.

3.    On January 7, 2014, 241 Delaware and Hazak, jointly, filed that "Amended and Restated Proof of Claim of 241 Fifth Ave. Hotel, LLC and Hazak Associates, LLC" [docket no. 658], which amends the Original 241 Delaware Claim and asserts a monetary claim against the bankruptcy estate of Beshmada in the sum of $33,650,000 (the "Amended 241 Delaware Claim"). See, Sharp, Exhibit No. 2.

4.    The Amended 241 Delaware Claim states that

Beshmada['s]    breaches    of    the    [241    Delaware]    Operating

PRINTED ON

RECYCLED PAPER
LA 11431716v3

JMBM | Jeffer Mangels Butler & Mitchell LLP

- 3 -

Agreement involve, among other things, (i) [Beshmada's] failure to honor capital calls, (ii) [Beshmada's] assignment and/or transfer of [Beshmada's] membership interest in 241 [Delaware], and (iii) allowing Nader & Sons LLC and Sisko Enterprises LLC (collectively, Nader & Sisko) to file UCC-1's, further disabling 241 [Delaware's] ability to raise capital.

5.    The Amended 241 Delaware Claim is the subject of this claim objection contested matter.

C.    <u>Operative Facts Re Amended 241 Delaware Claim.</u>

1.    On or about January 3, 2007, 241 Fifth Ave., LLC, a New York limited liability company, as seller ("Seller"), and 241 Fifth Ave. Hotel, LLC, a New York limited liability company, as buyer ("241 New York"), entered into that "Purchase and Sale Agreement" (the "PSA") with respect to that real property commonly known as 241 Fifth Avenue, New York, New York (the "241 Property"). See, Sharp Exhibit No. 3.

2.    On or about February 20, 2007, Seller and 241 New York entered into that "First Amendment to Purchase and Sale Agreement" (the "PSA Amendment"). Among other things, the PSA Amendment (i) reduced the purchase price for the 241 Property from $27,000,000 to $26,500,000 and (ii) changed the closing date for the purchase and sale of the 241 Property to March 20, 2007 (with 241 New York also having a seven day grace period). See, Sharp Exhibit No. 4.

3.    On March 19, 2007, 241 Delaware filed its "Certificate of Formation," thereby creating and forming 241 Delaware. See, Sharp Exhibit No. 5.

4.    On or about March 20, 2007, 241 New York and 241 Delaware entered into and executed that "Certificate of Merger of 241 Fifth Ave. Hotel, LLC (a New York limited liability company) Into 241 Fifth Ave. Hotel, LLC (a Delaware limited liability company) Under Section 1003 of the Limited Liability Company Law" whereby 241 Delaware and 241 New York merged, with 241 Delaware being the surviving entity. See, Sharp Exhibit No. 6.

5.    On March 21, 2007, 241 New York and 241 Delaware filed, with the Delaware Secretary of State, that "State of Delaware Certificate of Merger of a Foreign Limited

PRINTED ON
RECYCLED PAPER
LA 11431716v3

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    Liability Company Into a Domestic Limited Liability Company" stating that 241 Delaware and 241

2    New York merged with 241 Delaware being the surviving entity.  See, Sharp Exhibit No. 7.

3                6.      Beshmada and Hazak entered into and executed that "Limited Liability

4    Company Agreement of 241 Fifth Ave. Hotel, LLC," dated as of March 20, 2007, with respect to

5    241 Delaware (the "241 Delaware Operating Agreement").[1]  See, Sharp Exhibit No. 8.

6                7.      On or about July 19, 2007, Namvar, as guarantor, executed and delivered to

7    Hazak that "Guaranty" whereby Namvar guaranteed to Hazak all "obligations" of Beshmada under,

8    and money due Hazak by Beshmada under, the 241 Delaware Operating Agreement.  See, Sharp

9    Exhibit No. 9.

10               8.      On or about July 19, 2007, Shavolian, as guarantor, executed and delivered to

11   Beshmada that "Guaranty" whereby Shavolian guaranteed to Beshmada all "obligations" of Hazak

12   under, and money due Beshmada by Hazak under, the 241 Delaware Operating Agreement.  See,

13   Sharp Exhibit No. 10.

14               9.      On July 31, 2007, a "Bargain and Sale Deed," made as of July 18, 2007, and

15   executed by Seller, was recorded in the New York City Department of Finance Office of the City

16   Register.  Pursuant to the "Bargain and Sale Deed," title to the 241 Property was transferred from

17   Seller to 241 New York (which had, by that time, merged with and into 241 Delaware).  See, Sharp

18   Exhibit No. 11.

19               10.     In 2007, Beshmada contributed, as its initial capital contribution, the sum of

20   $7,280,030 to 241 Delaware.

21               11.     For 241 Delaware (as the surviving entity in its merger with 241 New York)

22   to acquire the 241 Property, 241 Delaware obtained a loan in the sum of $22,750,000 from Inland

23   Mortgage Capital Corporation ("Inland"), secured by the 241 Property (the "Inland Loan").

24               12.     241 Delaware executed and delivered to Inland that "Consolidated, Amended

25   and Restated Installment Note," dated as of July 19, 2007, in the principal amount of $22,750,000

26   _____

27   [1] The parties' respective Trial Brief in this matter will advise the Court of the relevant
     provisions of the 241 Delaware Operating Agreement.

28

JMBM | Jenner Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1    (the "Inland Note").  See, Sharp Exhibit No. 12.

2              13.    The Inland Note provides that the maturity date of all obligations in and

3    under the Inland Note was April 30, 2008.

4              14.    The Inland Note also contains provisions concerning the ability of 241

5    Delaware to obtain a one time six month extension of the Inland Note maturity date from April 30,

6    2008 to October 30, 2008.

7              15.    Concurrently with 241 Delaware's execution and delivery of the Inland Note,

8    241 Delaware also executed and delivered to Inland that "Consolidated, Amended and Restated

9    Mortgage, Security Agreement, Assignment of Rents and Financing Statement" (the "Inland

10   Mortgage") which created a first position lien and mortgage against the 241 Property.  The Inland

11   Mortgage was recorded on August 17, 2007, in the New York City Department of Finance Office of

12   the City Register.  See, Sharp Exhibit No. 13.

13             16.    Concurrently with 241 Delaware's execution and delivery of the Inland Note

14   and Inland Mortgage, Namvar, as the principal of Beshmada, and Shavolian, Hazan and Cohen, as

15   principals of Hazak, and 241 Delaware executed and delivered to Inland that "Limited Guaranty

16   Agreement" with respect to the Inland Note.  See, Sharp Exhibit No. 14.

17             17.    Afshin Hakim was hired as general counsel to Namco Capital Group, Inc.

18   ("Namco"), an entity controlled by Namvar, and in such capacity also provided legal

19   services/advice to Beshmada.

20             18.    In late 2007, Afshin Hakim, an in-house attorney for Namco and Namvar's

21   affiliated entities drafted and sent to Shavolian (a) a draft "Option Agreement" for 241 Partners,

22   LLC, an entity controlled by Shavolian, to purchase Beshmada's membership interest in 241

23   Delaware, and (b) a "Membership Purchase Agreement" for 241 Partners, LLC to purchase

24   Beshmada's membership interest in 241 Delaware.  See, Sharp Exhibit No. 15.

25             19.    On March 27, 2008, Shavolian sent an email to Namvar stating "Lets [sic]

26   come up with a plan to syndicate 241 5th."  See, Sharp Exhibit No. 16.

27             20.    On April 4, 2008, Shavolian wrote an email to Namvar.  See, Sharp Exhibit

28   No. 17.

PRINTED ON
RECYCLED PAPER
LA 11431716v3

JMBM | Jeffer Mangels
Butler & Mitchell LLP

21.    On April 7, 2008, Shavolian forwarded, by email, to Namvar that February 4, 2008 email written and sent by Shavolian to Kenneth Herzberg.  See, Sharp Exhibit No. 18.

22.    On April 30, 2008, the original initial maturity date of the Inland Note, 241 Delaware failed to pay to Inland all monies due to Inland under the Inland Note.

23.    On May 1, 2008, Ellen Jackson ("Jackson") of Inland wrote an email to Hazan concerning the Inland Loan (the "Jackson May 1, 2008 Email").  See, Sharp Exhibit No. 19.

24.    On May 6, 2008, Hazan forwarded, by email, the Jackson May 1, 2008 Email to Shavolian.  See, Sharp Exhibit No. 19.

25.    On May 6, 2008, at 12:25 p.m., Shavolian wrote an email to Namvar stating "We need to 1.3 mm to cover interest reserves for 241.  We need this soon."  Eight minutes later, Namvar responded to Shavolian by email stating "This is funny, do u have any one 2 buy me out?"  See, Sharp Exhibit No. 20.

26.    On May 8, 2008, at 12:24 p.m., Jackson sent an email to Hazan (the "Jackson May 8, 2008 Email") stating, in part,: "As you know, the above referenced loan matured on April 30th.  Based on our prior conversations, the Lender believed that you intended to request an extension, and had expected that a signed copy of the request for that extension, payment of the $245,485.67 extension fee, and the $25,784.69 balance due for the May 1st, 2008 interest billing would have been received by Tuesday, May 06th, 2008.  [Inland] is very concerned that to date they have not received these items or any communication from you."  See, Sharp Exhibit No. 21.

27.    On May 9, 2008, at 11:35 a.m., Hazan forwarded, by email, to Shavolian the Jackson May 8, 2008 Email.  See, Sharp Exhibit No. 21.

28.    On May 14, 2008, Shavolian sent an email to Namvar which (a) forwarded the Jackson May 1, 2008 Email to Namvar and (b) told Namvar "See attached and below.  We need to fund the 241 interest reserve account so that we can get the extension.  We are running late.  I don't want them to call us in default."  See, Sharp Exhibit No. 22.  Namvar, that same day, responded to Shavolian by stating that "They need 2 allow us to put a 2nd mortgage, call me I will explain."  See, Sharp Exhibit No. 23.

29.    Later, on May 14, 2008, Shavolian sent a second email to Namvar stating

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1    "Just talked to them.  They are getting ready to call the loan.  Need to talk with

2    you."  See, Sharp Exhibit No. 24.

3        30.    On May 14, 2008, Shavolian sent an email to Namvar, which email included

4    an email string among Shavolian and persons at The Carlton Group and various attachments, stating

5    the following to Namvar: "Take a look at these.  I am trying to get the Hotel Group Kimpton to

6    participate with equity.  They may take 50%.  The total equity requirement went from 15 mm to 30

7    mm, since the credit crash.  This deal still makes lots of sense."  See, Sharp Exhibit No. 25.

8        31.    On May 15, 2008, Inland sent a letter entitled "Notice of Default" to 241

9    Delaware, to the attention of Shavolian and Hazan, stating, among other things, that "Notice is

10   hereby given that [241 Delaware] is in default of its obligations under the [Inland Note and Inland

11   Mortgage] inasmuch as [241 Delaware] has failed and refused to remit to [Inland] … the unpaid

12   principal balance, all accrued and unpaid interest, late charges and all other sums due April 30,

13   2008" (the "May 15 Default Letter").  In the May 15 Default Letter, Inland informed 241 Delaware

14   that the amount due under the Inland Note, as of May 15, 2008, was $23,777,898.82 plus a diem

15   amount of $10,820.69 commencing on May 16, 2008.  See, Sharp Exhibit No. 26.

16       32.    On May 15, 2008, Shavolian wrote an email to Namvar stating "they will not

17   allow a second mortgage.  We need to fund this or will be in default.  Please call me[.]"  See, Sharp

18   Exhibit No. 27.

19       33.    On May 19, 2008, Shavolian sent an email to Namvar with the May 15

20   Default Letter attached thereto stating the following: "Default letter.  We are going to lose this."

21   See, Sharp Exhibit No. 28.

22       34.    On the evening of May 21, 2008, Shavolian sent an email to Namvar and

23   Hamid Taba, an employee of Namco Capital Group, Inc., stating: "Hi.  Did you sent out a wire?  Or

24   a check?"  On May 22, 2008, Mr. Taba responded as follows: "Five [sic] me $$ amount, Ezri can

25   not find it."  Approximately 30 minutes later, Shavolian responded to Mr. Taba by stating:

26   "$217,016.00 is your share.  Please fedex.  Thx."  See, Sharp Exhibit No. 29.

27       35.    On May 22, 2008, Beshmada contributed and disbursed to 241 Delaware the

28   sum of $217,016.00.  See, Sharp Exhibit 93.

JMBM  Jeffer Mangels
Butler & Mitchell LLP

36.    On June 3, 2008, Inland sent an email to Shavolian attaching thereto a bill for the interest due for the month of May, 2008 in the sum of $180,296.13.  On June 3, 2008, Shavolian forwarded, by email, this email from Inland to Namvar.  See, Sharp Exhibit No. 30.

37.    On or about June 12, 2008, Beshmada, as a pledger, executed that "Loan, Pledge and Security Agreement" (the "Pledge Agreement") whereby, among other things, Beshmada pledged its membership interest in 241 Delaware to Nader & Sons, LLC as security for Nader & Sons, LLC's multi-million dollar loan to Namco.  On or about July 16, 2008, the parties to the Pledge Agreement and Sisko Enterprises, LLC, as an additional lender and pledgee, entered into that "First Amendment to Loan, Pledge and Security Agreement."  See, Sharp Exhibit No. 31.

38.    Afshin Hakim was involved in and handled the loan transaction which was the subject of the Pledge Agreement, as amended, on behalf of Namco, Namvar and Beshmada, and provided a copy of the 241 Delaware Operating Agreement to Nader & Sons, LLC and Sisko Enterprises, LLC.  Mr. Hakim believes that at some point  prior to the execution of the Pledge Agreement, the 241 Delaware Operating Agreement was provided to Nader & Sons, LLC and its counsel and that the loan referred to therein was funded prior to the execution of the Pledge Agreement.

39.    Afshin Hakim believes that he had discussions with the principals of Nader & Sons, LLC and Sisko Enterprises, LLC and their counsel concerning that the pledge of Beshmada's interest in 241 Delaware could technically cause a default of the Inland Loan.

40.    On June 16, 2008, Jackson (of Inland) sent an email to Shavolian and Hazan (the "Jackson June 16, 2008 Email") stating: "[Inland] is increasingly concerned regarding the status of the 241 5th Avenue loan.  I'd emailed a request for conference call last Wednesday, but have received no response to date.  The following issues need to be addressed as quickly as possible: No remittance has been received for the June 1st interest billing.  $180,296.13 was due on or before June 10th, 2008.  A verbal request has been received that Inland fund the open invoices from the Architect.  This funding by Inland has been represented as critical to the success of the project.  Because no funding can take place until the loan is extended, payment to the Architect must be made by the Borrower, with proof of said payment sent to Inland."  See, Sharp Exhibit No.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

32.

41.     On June 17, 2008, Shavolian forwarded to Namvar, by email, the Jackson June 16, 2008 Email and told Namvar "Please see below.  I need a wire or a check in the amount of $152,236.00.  Wire would be much better.  Can you wire?"  See, Sharp Exhibit No. 32.

42.     On June 17, 2008, Namvar responded to Shavolian's email of June 17, 2008 by stating: "I can not this month is the worst."  On the same day, Shavolian responded to Namvar in an email stating: "They will close us down.  I'm also in a horrible shape."  Namvar and Shavolian continued their email communications on June 17, 2008 concerning a possible source of funds (Shahriar Homapour) for Namvar/Beshmada.   See, Sharp Exhibits No. 33 and 34.

43.     On June 18, 2008, Shavolian sent an email to Namvar stating that "Homapour never called.  Will call him again."  See, Sharp Exhibit No. 35.

44.     On June 24, 2008, Shavolian sent an email to Namvar stating: "Pls fedex me a check made payable to: 241 5th Ave LLC in the amount of $152,236.00."  See, Sharp Exhibit No. 36.  On that same day, June 24, 2008, Beshmada contributed and disbursed to 241 Delaware the sum of $152,236.00.  See, Sharp Exhibit 93.

45.     On June 30, 2008, Afshin Hakim sent an email to Namvar asking: "Ezri – please let me know if you have spoken to Danny Shavolian about getting his consent regarding pledge of membership interests in 127 W. 25th and 241 Fifth Ave. Hotel LLC.  Nader's counsel has sent me a number of emails asking for them."  That same day, Namvar responded to Mr. Hakim's email and copied Shavolian thereon and stated: "No please tell him."  Shavolian responded by email to Namvar's email, and added thereto attorney Bruce Leuzzi, and stated: "Have no idea what this is.  Please ask Bruce [Leuzzi]."  In response, Mr. Hakim sent an email to Shavolian and Mr. Leuzzi stating: "Ezri is pledging his membership interest in 127 West 25th LLC and 241 Fifth Ave. Hotel LLC as collateral in connection with a short-term third party loan.  Lender has asked for us to provide consent of the other member.  I will prepare the form and send it to you for approval."  Later, on June 30, 2008, Mr. Hakim sent an email to Shavolian and Mr. Leuzzi, which enclosed a proposed form of consent for the pledge concerning 127 West 25th LLC, and stated: "Here is a draft for 127.  To the extent you don't have any comments, I will provide a similar one for 241 Fifth Ave.

PRINTED ON
RECYCLED PAPER
LA 11431716v3

Hotel, LLC." See, Sharp Exhibit No. 37.

46.    On July 1, 2008, Mr. Hakim sent an email to Shavolian, which enclosed a form of consent for execution by Hazak concerning Beshmada's pledge of its membership interest in 241 Delaware, stating: "Here are the two consents we need signed. Thank you." See, Sharp Exhibit No. 38.

47.    On July 7, 2008, Shavolian sent an email to Namvar stating: "Please send me a check in the amount of $139,584.09. Make payable to 241 5th ave. Hotel LLC. Send by FedEx to below." See, Sharp Exhibit No. 39.

48.    On July 9, 2008, Beshmada contributed and disbursed to 241 Delaware the sum of $139,584.09. See, Sharp Exhibit No. 93.

49.    On July 18, 2008, Namvar wrote an email to Shavolian stating: "Danny I really want out of this deal." See, Sharp Exhibit No. 40.

50.    On July 21, 2008, Shavolian sent an email to Namvar, enclosing a "Financing Memorandum" concerning the 241 Property, stating: "Here is the book. Please send me a term sheet for a loan. Please be as aggressive as you can." See, Sharp Exhibit No. 41.

51.    On July 24, 2008, Inland sent a letter to 241 Delaware, Attention: Dan Shavolian, enclosing a proposed letter, which was back dated to April 30, 2008, to be signed by 241 Delaware extending the maturity date of the Inland Note to October 31, 2008. The enclosed "Extension Letter" was executed by Shavolian, on behalf of 241 Delaware, in August, 2008. See, Sharp Exhibit No. 42.

52.    On July 29, 2008, Nader & Sons, LLC recorded, in the New York City Department of Finance Office of the City Register, a UCC 1 Financing Statement, which named 241 Delaware as the debtor and described the collateral as "the 50% Membership Interest in the Debtor owned by the California Limited Liability Company known as Beshmada, LLC …" See, Sharp Exhibit No. 43.

53.    On August 1, 2008, GSY Corp. recorded, in the New York City Department of Finance Office of the City Register, a UCC 1 Financing Statement, which named 241 Delaware as the debtor, described the collateral as "pursuant to pledge agreement for 241 5th Ave. Hotel LLC

PRINTED ON

RECYCLED PAPER

LA 11431716v3

- 11 -

1    for loan from GSY Corp." (the "GSY UCC 1").  See, Sharp Exhibit No. 44.

2          54.    On August 14, 2008, Afshin Hedvat ("Hedvat") signed, with respect to the

3    241 Property, the New York City Department of Environmental Protection's Asbestos Project

4    Notification.  Hedvat signed such Asbestos Project Notification on behalf of the owner of the 241

5    Property.  See, Sharp Exhibit No. 45.

6          55.    Hedvat is Shavolian's brother in law and the husband of Shavolian's sister.

7          56.    Foremost Real Estate is a company owned and controlled by Shavolian.

8          57.    Hedvat had an email address of afshin@foremostre.com and maintained an

9    office in the offices of Foremost Real Estate.

10          58.    On August 20, 2008, Jackson sent an email to Shavolian, which among other

11    things, states: "In the meantime there are some items that we'd expected to have received by now.

12    Please advise me of the status of the following: Remittance of the August 1st interest billing in the

13    amount of $182,112.95[;] Payment of past due late charges for previous interest billings totaling

14    $19,028.05[;] An executed copy of the Extension Agreement letter sent to you early last month[;]

15    Current Financials for Ezri Namvar and Albert Cohen .  Thank you for your help."  See, Sharp

16    Exhibit No. 46.

17          59.    On August 22, 2008, Shavolian sent an email to Namvar which (a) forwarded

18    Jackson's above described August 20, 2008 email and (b) stated: "Please send me a check made

19    payable to 241 5th Ave. Hotel LLC in the amount of $152,000."  Namvar responded, by email, to

20    Shavolian by stating: "I am short."  Shavolian responded, by email, to Namvar stating: "Me too.

21    They will foreclose."  See, Sharp Exhibit No. 47.

22          60.    On August 25, 2008, Shavolian wrote an email to Namvar asking "Are you

23    sending this [$152,000] out?"  See, Sharp Exhibit No. 48.

24          61.    On August 28, 2008, Shavolian wrote an email to Namvar which stated:

25    "Please please please send this [$152,000] today."  See, Sharp Exhibit No. 49.

26          62.    On August 29, 2008, Inland sent a letter entitled "Notice of Default" to 241

27    Delaware, Attention: Dan Shavolian, stating: "Notice is hereby given to Borrower and Guarantor

28    that Borrower is in default of its obligations under the above Note and Mortgage inasmuch as

PRINTED ON

RECYCLED PAPER
LA 11431716v3

Borrower has failed and refused to remit to [Inland], the monthly payment of interest, which was due and payable on August 1, 2008, and late charges as follows: [(a)] Total August Payment $182,112.95, [(b)] Default Interest 08/01/08 through 08/29/08 $146,292.82, [(c)] June '08 Late Charge $9,014.81, [(d)] July '08 Late Charge $8,724.01, [(e)] August '08 Late Charge $9,105.65, Total Due $355,250.24.  Unless you cure the foregoing default by September 8, 2008, the holder of the Note and Mortgage will avail itself of the rights and remedies reserved under the above Note and Mortgage including the right to accelerate the entire unpaid balance due thereunder and to initiate a foreclosure sale of the Property."  See, Sharp Exhibit No. 50.

63.    On August 29, 2008, Beshmada contributed and disbursed to 241 Delaware the sum of $152,000.00.  See, Sharp Exhibit No. 93.

64.    Inland provided 241 Delaware with a "pre-negotiation letter," dated September 5, 2008, concerning the Inland Loan for execution.  Shavolian, on behalf of 241 Delaware, executed this "pre-negotiation letter" on September 10, 2008, and emailed it back to Jackson of Inland.  See, Sharp Exhibit No. 51.

65.    On September 10, 2008, Jackson sent an email to Shavolian asking for his written proposal re Inland Loan and certain information concerning the 241 Property.  On September 17, 2008, Shavolian responded, by email, to Elizabeth Barca ("Barca") of Inland and attached to such email plans for the 241Property and a proposal to restructure the Inland Loan. See, Sharp Exhibit No. 52.

66.    On September 17, 2008, Shavolian sent an email to Namvar stating: "Please send out a check to 241 5th ave. LLC for $152,000.  PLEASE."  That same day, Namvar responded, by email, to Shavolian stating: "I swear I don't have."  Two minutes later, Shavolian responded to Namvar, by email, stating: "Then we should throw in the towel."  See, Sharp Exhibit No. 53.

67.    On September 29, 2008, Shavolian sent an email to Barca of Inland attaching a (a) a fully executed Hotel Operating Agreement with Kimpton Hotel & Restaurant Group, LLC ("Kimpton") re 241 Property and (b) a fully executed Technical and Pre-Opening Services Agreement with Kimpton re 241 Property.  See, Sharp Exhibit No. 54.

68.    Kimpton provided Shavolian/241Delaware with a (a) Hotel Pre-Opening

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11431716v3

Budget/Cost of $1,834,503, (b) a Hotel Development Budget/Cost of $87,864,436 and (c) a

Development Budget Summary in the sum of $94,789,567.  See, Sharp Exhibit No. 55.

69.    On September 30, 2008, John Berghorst ("Berghorst") of Inland sent an

email to Shavolian stating: "Thanks again for your time yesterday.  Can you confirm if you will be

able to wire the 9/1/2008 debt service payment today so that the loan is not showing as delinquent

as of quarter end?  Please let us know the date(s) we should expect that and the 10/1/08 payment.

Thanks."  See, Sharp Exhibit No. 56.

70.    On October 1, 2008, Barca of Inland sent an email to Shavolian stating: "I

just left a message at your office.  Please call me on Thursday to let me know when we will be

receiving the September and October payments.  It is extremely difficult to propose any type of loan

extension/modification to the lender when interest payments are outstanding."  See, Sharp Exhibit

No. 56.

71.    On October 1, 2008, Shavolian (a) forwarded, by email, to Namvar the above

referenced September 30 and October 1 emails from Inland and (b) in that email to Namvar stated:

"We need to pay them.  They are our only hope to saving this deal.  Please read below."  See, Sharp

Exhibit No. 56.

72.    On October 1, 2008, Susan Dzija of Inland sent an email to Shavolian stating:

"Attached you will find the October Bill for Loan # 1458, 241 5th Avenue."  The attachment states

that the past due amount owed by 241 Delaware to Inland was, as of October 1, 2008, the sum of

$547,083.84.  See, Sharp Exhibit No. 57.

73.    On October 20, 2008, The New York City Landmarks Preservation

Commission issued a "Permit - Certificate of Appropriateness" for the "proposed work at" the 241

Property.    This "Permit - Certificate of Appropriateness" expires June 13, 2012. See, Sharp

Exhibit No. 58.

74.    On October 23, 2008, Shavolian wrote an email to Namvar stating: "Your

pledging the membership interest of 127 w 25 and 241 5th ave are completely illegal.  Not allowed

under the terms of the loan documents and/or the operating agreement.  Since you insisted that I be

patient and don't seek legal remedy, I have done so till now.   Unfortunately, we are at a juncture

PRINTED ON

RECYCLED PAPER
LA 11431716v3

where I must move to protect my ownership." See, Sharp Exhibit No. 59.

75.     On October 31, 2008, Berghorst of Inland sent an email to Shavolian which, among other things, proposed the following modification/extension of the Inland Loan: "Maturity: 10/31/10[;] Extension Fee: 1% of the new commitment amount[;] Paydown: $11,500,000 (includes future insurance, taxes, and demolition costs to be drawn from the loan[;] New Commitment: $15,300,000 (approximate)[.]  The paydown and new commitment would allow the Borrower to advance funds for interest, taxes, insurance and demolition during the extension term." See, Sharp Exhibit No. 60.

76.     On November 14, 2008, Barca of Inland sent an email to Shavolian stating, in part, that "[Inland] will consider presenting to the Board of Directors an extension on the subject property based on the following terms: 18 month extension[;] Interest rate can be Prime +2 or LIBOR +4, either option will have a floor of 6.5%[;] 1% extension fee totaling $194,507.92 [and] Principal reduction of $3,608,776.72."  In this email Barca also states that "these terms must be accepted on or before Tuesday, November 18, 2008.  Also, we must receive a payment of $176,311.63 no later than Wednesday, November 19, 2008." See, Sharp Exhibit No. 61.

77.     On November 25, 2008, Shavolian and Brendan Sullivan of The Carlton Group sent each other a series of emails; Shavolian, in his 12:19 p.m. email, informed Mr. Sullivan that "our DOB plans were approved last week Thursday." See, Sharp Exhibit No. 62.

78.     On December 8, 2008, Namvar sent, by email, a letter to Shavolian, dated December 5, 2008, concerning the pledges referred to in Shavolian's October 23, 2008 email and his inability to obtain a release of such pledges. See, Sharp Exhibit No. 63.

79.     On December 8, 2008, Inland sent a letter to 241 Delaware, Attention Dan Shavolian, stating: "The subject loan matured October 31, 2008, and in accordance with the terms and provisions of the Note, the entire unpaid principal balance and all unpaid interest and late charges are due and payable to [Inland].  The following amount is now due: Principal[:] $22,701,068.04[;] Interest 09/01/08 through 10/31/08[:] $358,500.31[;] Default Interest 08/01/08 through 10/31/08[:] $464,110.72[;] Default Interest 11/01/08 through 12/04/08[:] $377,203.14[;] June '08 through October '08 Late Charges[:] $44,769.48[;] Attorney's Fees[:] $198.75[;] Balloon

PRINTED ON

RECYCLED PAPER
LA 11431716v3

1    Late Charge[:] $1,152,978.42" for a total of $25,098,828.86 plus $11,094.21 per day after

2    December 4, 2008.  See, Sharp Exhibit No. 64.

3            80.    On January 12, 2009, Frances Panico ("Panico") of Inland, wrote an email to

4    Shavolian stating: "… I am summarizing the proposal you discussed during your conversation with

5    me … My understanding of the proposal is as follows: Extend the loan until July 15, 2009, with a

6    payment of $500,000 for interest by January 23, 2009, with a provision for another 6 month

7    extension with a payment of $500,000 payable on or before July 1, 2009, subject to the provision  of

8    the sale of the note to a third party by [Inland] or the Borrower.  If you find someone to purchase

9    the loan or if you refinance the property by July 15, 2009, [Inland] will accept $17,000,000 as

10   payment of principal.  If [Inland] should find a buyer at any time for the loan for more than

11   $17,000,000 you will have the right of first refusal to purchase the loan at the higher amount.  …

12   Please respond on or before January 14, 2009."  See, Sharp Exhibit No. 65.

13           81.    On January 15, 2009, Panico sent an email to Shavolian stating: "I tried

14   contacting you yesterday and left a message at the main switch board.  You were to respond to this

15   email[, Panico's above January 12, 2009 email,] yesterday agreeing to the terms of the proposal.

16   Please advise if we are to move forward and document this agreement."  That same day, Shavolian

17   responded to Panico by email stating: "I am ok with the basic concept of this deal pending the

18   formal agreement and execution."  See, Sharp Exhibit No. 66.

19           82.    On January 29, 2009, Tony Caruso, counsel for Inland, sent an email to

20   Bruce Leuzzi, counsel for Shavolian and 241 Delaware, attaching thereto a proposed first

21   amendment to the Inland Note.  See, Sharp Exhibit No. 67.

22           83.    On February 5, 2009, Mr. Leuzzi emailed Mr. Hakim, counsel for Namvar

23   and Beshmada, forwarding Mr. Caruso's January 29 email and attachment thereto and asked Mr.

24   Hakim: "could you please call me today regarding the attached?"  Mr. Hakim, by email, forwarded

25   Mr. Leuzzi's February 5 email to Namvar and therein summarized the proposed first amendment to

26   the Inland Note.  See, Sharp Exhibit No. 67 and 68.

27           84.    On February 13, 2009, Shavolian sent a letter, dated February 12, 2009, to

28   Beshmada, Attention: Namvar, wherein Shavolian, in part, states: "We have had several meetings of

JMBM | Jeffer Mangels
Butler & Mitchell LLP

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    the Executive Committee … More particularly, I have repeatedly presented plans (the "Plans") to

2    illustrate that [241 Delaware] needs $2,000,000 to enable it to (a) avoid a foreclosure by the existing

3    mortgage ($500,000) (the mortgagee is already on the precipice of commencing a foreclosure action

4    and I am struggling to keep them at bay), and (b) rehabilitate the [241 Property] so that it can be

5    improved from its current dilapidated state to a condition where it can become income producing

6    ($1,500,000).  We failed to agree on (a) whether the Executive Committee should implement the

7    Plans, and (b) whether the Executive Committee should request or cause an Additional Capital

8    Contribution be made – I have repeatedly voted to implement the Plans and make the request and

9    you have repeatedly voted against such implementation and request."  See, Sharp Exhibit No. 69.

10           85.     On February 13, 2009, The City of New York Department of Buildings

11   issued a "Notice" with respect to the 241 Property stating, among other things, that the 241 Property

12   is "unsafe and dangerous in the following respects to wit: the building is vacant, unguarded and

13   open to vandalism [and] missing waterproof membrane on roof with holes throughout[,]

14   accumulation of debris throughout interior, with collapsed ceilings [on] all floors" (the "Unsafe

15   Building Notice").  See, Sharp Exhibit No. 70.

16           86.     On March 26, 2009, Inland sent an email to Shavolian attaching the Unsafe

17   Building Notice.  See, Sharp Exhibit No. 71.

18           87.     On April 3, 2009, Panico of Inland sent an email to Shavolian stating: "I am

19   sorry, but we have no deal.  Please call me if you want the details."  See, Sharp Exhibit No. 72.

20           88.     On April 6, 2009, Mr. Hakim, on behalf of Namvar and Beshmada, sent an

21   email to Mr. Leuzzi asking "what's the status on this [proposed modification of the Inland Note as

22   set forth in Mr. Caruso's below email of January 29, 2009?]"  See, Sharp Exhibit No. 73.

23           89.     On April 7, 2009, Mr. Leuzzi, by email, with a copy to Shavolian, responded

24   to Mr. Hakim's April 6, 2009 email and therein stated: "The lender asked that the borrower agree,

25   before pursuing any further discussion, to allow the lender to pursue a parallel course of foreclosure

26   while the agreement was in effect.  Basically, this means that they can foreclose immediately if the

27   agreement is violated or if the borrower does not buy the loan out per its terms by the end of the

28   extension period(s).  I understand that the Borrower did not want to agree to this.  I believe things

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1    have been in a holding pattern since.  Danny is asking why Ezri did not respond to the capital call as

2    [241 Delaware] needs money."  See, Sharp Exhibit No. 74.

3              90.    On May 15, 2009, Uzzi Raanan ("Raanan"), counsel to R. Todd Neilson,

4    chapter 11 trustee of the bankruptcy estate of Ezri Namvar ("Neilson"), had a telephone

5    conversation with Claude Castro ("Castro"), counsel for Shavolian and Hazak, concerning a motion

6    for relief from the automatic stay filed by Inland against the bankruptcy estate of Namvar.

7              91.    On May 15, 2009, after Raanan spoke to Castro, Raanan sent an email to

8    Castro which (a) acknowledged their telephone conversation of earlier that day and (b) requested

9    that Castro and his clients provide certain information to Raanan to allow Neilson to evaluate and

10    respond to the motion for relief from the automatic stay filed by Inland against Namvar's

11    bankruptcy estate.  See, Sharp Exhibit No. 75.

12              92.    On May 19, 2009, Hazak sent a letter, signed by Shavolian, to Beshmada and

13    Namvar, alleging that (a) a deadlock exists with respect to Additional Capital Contributions, (b)

14    Hazak has contributed Additional Capital of $424,000, which has been paid to Inland, (c) Beshmada

15    was in breach of Article 9.01 of the 241 Delaware Operating Agreement, and (d) Inland will enforce

16    its remedies unless the defaults under the Inland Loan are cured.  This letter also proposed that (e)

17    241 Delaware pay all arrearages due to Inland plus a six month interest reserve to attempt to avoid

18    foreclosure of the 241 Property or (f) 241 Delaware offer to purchase the Inland Loan; with respect

19    to paying Inland the arrearages and an interest reserve, Hazak represented that it was prepared to

20    advance its 20% share.  See, Sharp Exhibit No. 76.

21              93.    On May 22, 2009, Castro sent an email to Raanan attaching thereto a letter

22    from Castro, dated May 22, 2009, and Hazak's letter of May 19, 2009, to Beshmada and Namvar.

23    See, Sharp Exhibit No. 77.

24              94.    On June 19, 2009, an Involuntary Petition was filed against Beshmada in the

25    United States Bankruptcy Court for the Central District of California.

26              95.    Effective as of June 16, 2009, the members of Beshmada amended

27    Beshmada's Operating Agreement and removed Namvar as Beshmada's manager and appointed

28    Louis A. Cicalese ("Cicalese") as the manager of Beshmada.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

96.    On June 24, 2009, Beshmada, by and through its Manager, Cicalese, sent a "Notice of New Executive Committee Member & Change of Address" and "Action By Written Consent of Sole Member of Beshmada, LLC a California limited liability company" to Hazak, Attention: Shavolian, Mr. Leuzzi and Mr. Oved, whereby Beshmada informed Hazak and Shavolian that Cicalese, the manager of Beshmada, has replaced Namvar as Beshmada's representative on 241 Delaware's Executive Committee.  See, Sharp Exhibit No. 78.

97.    Afshin Hakim reported to Cicalese with regard to Beshmada's interest in 241 Delaware.

98.    On June 24, 2009, Afshin Hakim sent an email to Mr. Leuzzi requesting a "status update with the lender on this [241] property" and asking if the lender had "formally instituted foreclosure proceedings?"   Mr. Leuzzi responded by email saying "you'll have to ask Danny … to my knowledge, though, foreclosure proceedings have not been commenced and Danny is still trying to find a way to resolve this…"  See, Sharp Exhibit No. 79 and 80.

99.    On June 29, 2009, Afshin Hakim wrote an email to Shavolian and Mr. Leuzzi, which, among other things, stated that Cicalese "would like to set up a conference call with Danny to go over the status of the property and the loan with Inland Mortgage. …  [Cicalese] would also appreciate if you would provide most recent financial information available on the property."  See, Sharp Exhibit No. 79 and 81.

100.    On July 2, 2009, Afshin Hakim sent an email to Shavolian and Castro enclosing that (a) "Action By Written Consent of the Members of Beshmada LLC a California limited liability company" and "Amendment to Operating Agreement" memorializing the change of Beshmada's manager from Namvar to Cicalese, (b) the "Involuntary Petition" filed against Beshmada and (c) that "Stipulation Between Debtor Ezri Namvar and the Chapter 11 Trustee of Ezri Namvar and the Chapter 11 Trustee of Namco Capital Group, Inc. Re Control of Affiliated Limited Liability Companies."  See, Sharp Exhibit No. 80.

101.    On July 2, 2009, Shavolian sent an email to Mr. Hakim stating, among other things, that Shavolian is "putting together the material Lou [Cicalese] requested.  It will take a day or 2."  On July 13, 2009, Mr. Hakim wrote an email to Shavolian and Castro stating: "Lou

PRINTED ON
RECYCLED PAPER
LA 11431716v3

[Cicalese] mentioned he still has not received any information on the property.  Can you please let us know when you will be forwarding the material?"  The next day, July 14, 2009, Shavolian responded by stating:

> Here is the basic scoop:
>
> The site is a 53x100 plot.  It is buildable to almost 70,000 sf.  Plans have been completed for a 134 room hotel with a restaurant on the ground floor.
>
> We also have an operating agreement with a hotel operator naked [sic] Kimpton Hotels.  We need money to buy out the Bank, own the land free and clear of any loans, and wait for the financing market to loan on the construction.  The bank has agreed so far to reduce the principal owed to 15mm from 23mm.  I believe they will go lower.
>
> I am attaching a rendering of the proposed hotel.
>
> As I mentioned in my capital call letter to Beshmada, I am ready to participate in the buying of the note with my share of the equity required under our partnership agreement.  Please let me know if your side can do the same.
>
> Please let me know if you have any questions or anything else.

See, Sharp Exhibit No. 79 and 81.

100.    On August 3, 2009, Timothy Lynch, New York City Department of Buildings, sent to Shavolian, by email, a letter stating that he "wish[es] to remind you … that the **emergency stabilization** (emphasis in original) of the unsafe premise [at the 241 Property] must proceed [and] is critical to cure the open hazardous violations … We understand that it is your eventual plan to demolish the building.  An application for demolition has been processed by the Department  but not permitted. …"  See, Sharp Exhibit No. 82.

101.    On August 11, 2009, Hedvat sent an email to Shavolian attaching a Certificate of Liability Insurance re 241 Property.  See, Sharp Exhibit No. 83.

102.    On Friday, August 14, 2009, Mr. Hakim wrote an email to Shavolian and Castro asking "Dan – can you give us a status update with the bank."  On Monday, August 17, 2009, Shavolian responded by stating: "As far as I know they are commencing foreclosure."  See, Sharp Exhibit No. 84.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

103.    In or about August, 2009, Cicalese requested from CBRE that they provide him with a restricted appraisal report with respect to the 241 Property.  On August 14, 2009, Evan Weiss of CBRE, by email, sent Cicalese a restricted appraisal report for the 241 Property which included CBRE's opinion of value, as of July 31, 2009, of the 241 Property.  See, Sharp Exhibit No. 85.

104.    On September 4, 2009, Inland filed, in the Supreme Court of the State of New York for the County of New York, a Complaint against 241 Delaware, and others, seeking, among other things, to conduct a foreclosure sale of the 241 Property.  See, Sharp Exhibit No. 86.

105.    On September 9, 2009, Castro sent, by email, to Dan Sedor, an attorney at Jeffer Mangels Butler & Mitchell, a letter, dated September 8, 2009, stating, in part, that "our client Dan Shavolian has received notification from the New York City Buildings Department that there are unsafe conditions at the [241 Property].  Funds are urgently needed to take care of the emergency conditions.  Please advise Mr. Cicalese of the emergency conditions that exist at [the 241 Property] and advise the undersigned how much Beshmada, LLC, a member of 241 5th Ave. Hotel, LLC, will contribute to repair the emergency conditions."  See, Sharp Exhibit No. 87.

106.    On September 9, 2009, Mr. Hakim, in response to Castro's September 9 letter to Mr. Sedor, sent an email to Castro stating, in part,: "We received the attached letter and wanted to get a copy of the notice form [sic] the New York City Buildings Department and an estimate from Danny as to how much money would be required to remedy the situation."  See, Sharp Exhibit No. 88.

107.    Without the consent of Beshmada and the unanimous approval of 241 Delaware's Executive Committee, 241 Delaware was unable to restructure and/or refinance the Inland Loan.

108.    On September 16, 2009, Art Rendak ("Rendak") of Inland sent an email to Shavolian attaching thereto a loan purchase term sheet with respect to the Inland Loan.  See, Sharp Exhibit No. 89.

109.    On September 29, 2009, Inland emailed to Shavolian a limited forbearance agreement between Inland and Shavolian with respect to the Inland Loan for Shavolian's signature.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

Jeffer Mangels
Butler & Mitchell LLP

JMBM

See, Sharp Exhibit No. 90.

110.    On October 6, 2009, Shavolian and Rendak sent a series of emails with respect to a term sheet concerning a limited forbearance agreement.  On October 6, 2009, Rendak sent, by email, to Shavolian an execution version of a term sheet for a forbearance agreement.  On October 7, 2009, Shavolian executed this version of the term sheet for a limited forbearance agreement, which, if formalized, would allow Shavolian, under certain terms and conditions, to purchase the Inland Loan for the sum of $13,500,000.  See, Sharp Exhibit No. 91.

111.    Also on October 6, 2009, Claude Castro emailed Dan Sedor, Louis Cicalese and Afshin Hakim about the pending Inland foreclosure action, advising that he had sent Mr. Sedor by Federal Express a copy of the summons and complaint.  The following day, Mr. Hakim emailed Mr. Castro advising that: "We are okay with having you represent the 241 Fifth Ave. Hotel LLC in this matter and as I mentioned over the phone we would pay our pro rata portion of your fees (80%) consistent with the operating agreement as they pertain to your representation of the entity."

112.    On October 20, 2009, Mr. Taba, on behalf of Beshmada, sent an email to Shavolian, which attached an itemized accounting of Beshmada's capital contributions in the sum of $7,940,866.09 to 241 Delaware, and asked "please review the attached report.  Feel free to contact us if you have any questions."  See, Sharp Exhibit No. 92 and 93.

113.    On October 26, 2009, Hedvat sent an email to Shavolian concerning the 241 Property.  See, Sharp Exhibit No. 94.

114.    On November 17, 2009, Castro sent an email to Mr. Sedor concerning Inland's foreclosure action against 241 Delaware, Beshmada's failure to retain him as counsel for 241 Delaware and the fact that Castro has not been retained to defend Inland's foreclosure action. On the same day, Mr. Sedor responded to Castro, by email, stating that Cicalese, as manager of Beshmada, "is not prepared to sign the retainer letter and Beshmada will not advance any portion of the retainer or fund the defense of the foreclosure action."  See, Sharp Exhibit No. 95.  Beshmada

///

///

///

elected not to retain counsel to appear in the Inland foreclosure action and did not take any steps to

defend against the Inland foreclosure action.

115.    On December 3, 2009, Cicalese received a letter, dated November 16, 2009,

from Shavolian wherein, among other things, Shavolian (a) refers to his letter of February 12, 2009,

(b) states that Inland has commenced foreclosure proceedings against the 241 Property and (c)

informs Cicalese that he, Shavolian, has been approached by a group with the idea of attempting to

purchase the Inland Loan, (d) states that Cicalese, as a member of 241 Delaware's Executive

Committee, indicated that Beshmada had no interest in participating in such purchase and (e) he,

Shavolian, "feels no constraint in proceeding with the group to acquire the [Inland L]oan …"  See,

Sharp Exhibit No. 96.

116.    On December 18, 2009, Inland and Shavolian executed and entered into a

formal, binding "Limited Forbearance Agreement" (the "Forbearance Agreement").  Pursuant, and

subject to, the terms and conditions of the Forbearance Agreement, Shavolian, or his designee,

could acquire all right, title and interest in, and to, the Inland Loan, including the Inland Note and

Inland Mortgage, for the payment of $13,500,000 to Inland, paid as follows: (a) $2,025,000 upon

execution of the Forbearance Agreement, (b) $1,350,000 on or before December 31, 2009, (c)

$675,000 on or before April 10, 2010, (d) $4,725,000 on or before June 30, 2010, (e) $2,362,500 on

or before September 30, 2010, and (f) $2,362,500 plus accruing interest, taxes and other costs and

advances on or before December 31, 2010.  See, Sharp Exhibit No. 97.

117.    On December 18, 2009, Inland received the $2,025,000 payment due upon

execution of the Forbearance Agreement.

118.    On December 22, 2009, Barca of Inland sent an email to Shavolian attaching

thereto a title report and related documents concerning the 241 Property which Inland had received

from Madison Title Agency, LLC.  See, Sharp Exhibit No. 98.

119.    On December 30, 2009, Inland received the sum of $1,350,000 that was due

under the Forbearance Agreement on or before December 31, 2009.

120.    On January 13, 2010, Shavolian and Hazan sent each other a series of emails

concerning a sale related to the 241 Property/Inland Loan.  In response to Shavolian's question of

PRINTED ON

RECYCLED PAPER
LA 11431716v3

"what's the offer?," Hazan states "$16M all cash quick closing but needs the fee, can you get from ezri trustee?" Shavolian the responded by stating: "I can. But 16 won't cut it. I have an offer at 17.5. Not taking it." See, Sharp Exhibit No. 99.

121.    On or about January 18, 2010, Bradley D. Sharp, as Trustee of Namco Capital Group, Inc.'s bankruptcy estate, Neilson, as Trustee of Namvar's bankruptcy estate, Cicalese, as manager of Beshmada, managing member of Dimes, LLC and sole manager of N.Y. 18, LLC, Nader & Sons, LLC and Sisko Enterprises, LLC executed and entered into a "Partial Settlement Agreement" whereby, among other things, Beshmada (a) agreed not to oppose or contest the validity of the Pledge Agreement, and (b) assigned, transferred and conveyed, on an "as is" basis, without any representations or warranties, its membership interest in 241 Delaware. (The Partial Settlement Agreement also included a transaction concerning N.Y. 18, LLC's membership interest in 127 West 25th LLC.) See, Sharp Exhibit No. 100.

122.    On April 15, 2010, a meeting, in Los Angeles, was held between Shavolian and Castro, on the one hand, and Cicalese, Neilson and Raanan concerning 241 Delaware and the 241 Property. This meeting was short and no agreements were reached concerning 241 Delaware or the 241 Property.

123.    In late April, 2010, 241 Delaware received an unsigned and undated letter from "Vision Capital Partners, LLC" concerning a "proposal" "for discussion purposes only" whereby (a) Vision Capital Partners, LLC would acquire the Inland Loan and "reduce" the Inland Loan to $18,750,000, and (b) 241 Delaware would pay Vision Capital Partners, LLC the sum of $3,000,000 in cash and thereby further reduce the amount of the Inland Loan to $15,750,000 (the "Vision Capital Proposal Letter"). Pursuant to its terms, the Vision Capital Proposal Letter, and the proposal set forth therein, would be "null and void" if it was not signed by 241 Delaware and returned to Vision Capital Partners, LLC by May 15, 2010. None of the dates set forth in the Vision Capital Proposal Letter were ever extended. See, Sharp Exhibit No. 101.

124.    At the time of the delivery of the Vision Capital Proposal Letter to 241 Delaware, Vision Capital Partners, LLC was a company to be formed by Shavolian and Hedvat, and, at that time, they were informed that the name "Vision Capital Partners, LLC" was a name

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1   available for a New York limited liability company.  However, the name Vision Capital Partners,

2   LLC was not available for a New York limited liability company.  Therefore, on May 7, 2010,

3   Shavolian and Hedvat caused "Articles of Organization of Vision Capital Group LLC" to be filed

4   with the State of New York Department of State, thereby forming Vision Capital Group, LLC.  See,

5   Sharp Exhibit No. 102 and 103.

6          125.    Accordingly, the Vision Capital Proposal Letter is really from a company

7   called Vision Capital Group LLC, not Vision Capital Partners, LLC.

8          126.    Hedvat was, during all relevant times at issue, the sole manager of Vision

9   Capital Group LLC.  From its inception to and through 2012 or 2013, Hedvat was a member of

10  Vision Capital Group LLC.

11         127.    From its inception to present, a limited liability company owned by

12  Shavolian has been one of the members of Vision Capital Group LLC.

13         128.    As of the date of the delivery of the Vision Capital Proposal Letter, Vision

14  Capital Group LLC had never made or entered into any loan transaction, financing transaction or

15  any other transaction at all.  In fact, according to Hedvat, during Vision Capital Group's entire

16  existence it has entered into only one transaction – it allegedly provided mezzanine financing of

17  approximately $5,000,000, funded by private individuals, to an entity owned and controlled by

18  Shavolian.

19         129.    Vision Capital Group LLC has no written Operating Agreement.  Hedvat

20  stated that any agreements with respect to Vision Capital Group LLC between him and Shavolian,

21  and all other investors, are all oral.

22         130.    On May 4, 2010, Shavolian sent an email to Cicalese which attached the

23  Vision Capital Proposal Letter.  See, Sharp Exhibit No. 104.

24         131.    On May 14, 2010, Shavolian, on behalf of Hazak, sent a "Notice of Default"

25  to Beshmada, in care of Cicalese, which among other things, asserts that Beshmada is in "default of

26  your obligations under the terms of the [241 Delaware Operating Agreement], in that, … you

27  improperly pledged your membership interests in [241 Delaware] to third parties in violation of

28  paragraph 9.01 of the [241 Delaware Operating] Agreement …"  See, Sharp Exhibit No. 105.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

132.    As of the conclusion of May 15, 2010, 241 Delaware did not sign and return the Vision Capital Proposal Letter to Vision Capital Partners, LLC or Vision Capital Group LLC.

133.    On May 21, 2010, 241 Delaware sent a letter, dated May 18, 2010, to Cicalese, signed by Shavolian, as "managing member." This letter, among other things, states that (a) Namvar "refused to consent to the Plan and refused to consent to the Additional Capital Contribution[, as such term is defined by the 241 Delaware Operating Agreement,] that I requested," (b) "[Shavolian has] been repeatedly advised by Mr. Cicalese that Beshmada will not contribute additional capital to [241 Delaware]", (c) Shavolian sought to invoke Article 7.02(n) of the 241 Operating Agreement to appoint an Independent Director for 241 Delaware, and (d) "since the offer from Vision Capital Group has a deadline of May 31, 2010 for acceptance, your immediate response is URGENTLY needed." In this same letter, Shavolian also claimed and stated (i) he was "advised that the mortgage [Inland Loan] can be purchased at a significant discount" and that he had "informed Mr. Cicalese of this fact and asked [Cicalese] whether or not [Beshmada] was willing to participate in providing the necessary funds to pay off the [Inland] [L]oan at a discount" and "in either event, [he] received absolutely no response from Mr. Cicalese", and (ii) he received no response to (a) his request for an independent director or (b) the Vision Capital Proposal Letter. See, Sharp Exhibit No. 106.

134.    On May 24, 2010, Cicalese, in response to Shavolian's May 18 letter, sent Shavolian an email asking certain questions and seeking certain information concerning the Vision Capital Proposal Letter, including inquiring about the identity of the required (a) guarantors, and (b) source of funds for the required $3,000,000 pay down on the Inland Loan, and the approximate $92,000 monthly payments that would be due thereafter on the reduced Inland Loan. Cicalese's May 24 email also reminded Shavolian that "Beshmada is also a managing member of [241 Delaware] and, as such, must participate in any decision to have a capital call of [241 Delaware's] members." That same day, Shavolian responded, by email, to Cicalese and, among other things, stated (a) "I sent you a request for capital last week, requesting $4,000,000 … to pay down the loan by 3mm. the balance of the 1mm will be held in escrow by the lender to fund the interest and carrying costs for approximately 1 year," (b) "the existing property will be rented on an as is basis.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

I fully expect the property to rent quickly.  Once rented, the property will probably have an income of approximately 1mm per year …" and (c) "[the lender] will accept the current guaranties of the current loan."  Also on May 24, Cicalese responded by email and, among other things, asked Shavolian (a) can you send me a leasing plan or some market data that would reinforce the contention that the [241 Property] will 'rent quickly,'" (b) "have you any proposed tenants that you have negotiatee [sic] with?" and (c) do you have a capital expenditure budget that would give us some indication of what is necessary to bring the [241 Property] to a market ready condition, notwithstanding your contention that it will rent 'as is'."  See, Sharp Exhibit No. 107 and 108.

135.    On May 24, 2010, John Kreis, counsel for Shavolian, sent an email to Raanan communicating a proposal/counteroffer to the transaction contemplated by the Partial Settlement Agreement.  See, Sharp Exhibit No. 109.

136.    On May 25, 2010, Shavolian responded, by email, to Cicalese's May 24 email as follows: "The Lender is aware of [Namvar's] bankruptcy and they are willing to move forward with my guarantee.  As for the renting plan, the ground floor which is 5000 sq ft should bring in $150 psf.  Also there 3 floors of commercial space totaling 15000 sf which should bring in $35 psf.  This means a gross rent of about 1.1mm for the entire building.  The expenses including RE taxes will be about $250k netting about 900K.  The 1mm which will be held in escrow will cover about 9 months of the interest charges plus it will pay for about 200K which is needed to bring the premises to a white box condition to make it suitable for renting.  As per the operating agreement, 80% of the capital is required by your side which is 3.2mm.  Please reply with your comments or questions ASAP as we do have a timing requirement as per the proposal by the lender."  See, Sharp Exhibit No. 108.

137.    On May 31, 2010, Shavolian sent an email to Cicalese asking "a favor of a reply [to my May 24 and 25 emails] would be greatly appreciated."  That same day, (a) Cicalese replied by email stating: "your email has been referred to our attorneys for review and response" and (b) Mr. Raanan responded by email to Shavolian stating "Dan, we are considering your letter and will respond shortly."  See, Sharp Exhibit No. 110 and 111.

138.    On June 9, 2010, Beshmada, through Cicalese, sent a letter, via facsimile and

PRINTED ON
RECYCLED PAPER
LA 11431716v3

email, to Shavolian requesting information and answers to seventeen (17) questions/requests concerning 241 Delaware, the 241 Property, and the Vision Capital Proposal Letter "before Beshmada can respond to your request."  See, Sharp Exhibit No. 112.

139.    On June 10, 2010, Nader & Sons, LLC recorded, in the New York City Department of Finance Office of the City Register, a UCC Financing Statement Amendment which terminated that UCC 1 Financing Statement of Nader & Sons, LLC recorded on July 29, 2008, naming 241 Delaware as the debtor.  See, Sharp Exhibit No. 113.

140.    On June 16, 2010, an unsigned letter, on the letterhead of Vision Capital Partners, LLC, was sent to 241 Delaware, at the address of Shavolian's office at Foremost Realty LLC, stating the following: "As you are aware, Vision Capital Partners LLC ("Vision") had forwarded to you a Term Sheet in connection with a proposed loan to you (the "Proposal").  The term sheet provided that unless you signed and returned it to us no later than April 30, 2012, the Proposal would become null and void.  To date, we have not received a countersigned copy of the Proposal.  In addition, we have run a title search which reflects that there is a UCC-1 filing by Nader & Sons as the secured party.  In all events we would not be in a position to close any loan with you unless and until that encumbrance was removed from the records.  Accordingly, please consider the Proposal withdrawn and of no further force or effect."  See, Sharp Exhibit No. 114.

141.    On June 21, 2010, Shavolian sent a letter, via email, to Cicalese in response to Cicalese's letter of June 9, 2010, stating, among other things, (a) "Vision Capital LLC has been designated as the new holder of the Note … [and] as the holder of the note, Vision Capital will receive the proceeds of the new loan," (b) there are "no operating budgets" for 241 Delaware, (c) "there are no tax returns" and "no tax returns have been filed" for 241 Delaware, (d) "the new lender has agreed to keep both guaranties [of Namvar and Shavolian] in place as they are.  You will have your proof when the loan documents are issued," (e) "since we have not yet marketed the premises, we have not identified any tenants yet.  In my email dated June 15, 2010 I gave you a detailed schedule of what the property will rent for.  I have a 25 year Real Estate background in New York.  I have also consulted with brokers and am confident these numbers are achievable," (f) "White Box Condition.  The premises is 20,000 sq. feet.  Its interior needs to be laminated with

PRINTED ON
RECYCLED PAPER
LA 11431716v3

sheet rock and painted.  This will cost approximately $200,000, at a cost of $10. PSF, and (g) "I am sure that you noticed that **the term sheet has a deadline of June 15**.  (Emphasis in original.)"  See, Sharp Exhibit No. 115.

142.    On June 22, 2010, Beshmada, through Cicalese, in response to Shavolian's June 21, 2010 letter, sent a letter to Shavolian asking additional questions and seeking further information due to the contents of Shavolian's June 21 letter, as well as repeating certain inquiries which Cicalese sought information.  Cicalese's June 22 letter also sought a status of Inland's foreclosure action.  See, Sharp Exhibit No. 116.

143.    On June 22, 2010, Shavolian sent a letter to Cicalese in response to Cicalese's June 22 letter.  Among other things, Shavolian's June 22 letter states: (a) "Vision Capital LLC has been designated as the new holder of the Note.  I do not hold any interest whatsoever in Vision Capital", (b) "Proceeds of the Loan.  Since Vision Capital is the holder of the Note, I assume it will receive all proceeds." (c) "As I have stated, I will provide my proof of funds at the arbitration hearing.", (d) "Information Re Leases.  While I have not yet marketed the property, in my email dated June 15, 2010 I gave you a detailed schedule of what the property will rent for.  I have a 25 year Real Estate background in New York.  I have also consulted with brokers and am confident these numbers are achievable.", (e) "White Box Condition.  This is my professional opinion." and (f) "the operating agreement has the mechanic's for a capital call.  If either one of the managing members do not agree to the call, then an arbitrator must be identified by the members.  This capital call is already 2 months old.  You still have not indicated whether you agree or you don't.  Please indicate whether you agree to the call or you don't.  If you don't, please identify an arbitrator.  Perhaps, you can raise any issues you have at the arbitration hearing."  See, Sharp Exhibit No. 117.

144.    On June 22, 2010, an Order for Relief was entered against Beshmada.

145.    On June 25, 2010, Mr. Kreis sent an email to Raanan containing a counteroffer with respect to the transaction contemplated by the Partial Settlement Agreement.  On June 26, 2010, Raanan sent an email to Mr. Kreis rejecting the counteroffer set forth in Mr. Kries' June 25 email.  See, Sharp Exhibit No. 118.

146.    On June 28, 2010, Beshmada, through Cicalese, sent a letter, by email, to

JMBM  Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11431716v3

Shavolian, which, among other things, stated: "After reviewing your inadequate responses, the unsigned and undated non-committal 'proposal' for a new loan, and your refusal to disclose your communications with the prior and current lenders, among other, we do not believe that Beshmada has sufficient information to make an informed decision about your capital call demand.  Beshmada therefore votes against requiring members of 241 Fifth to make an additional capital call.  Beshmada also rejects your demand for arbitration of the above dispute.  As you know, Beshmada is a debtor in the above-entitled bankruptcy case …[and arbitration] will require relief from the automatic stay."  See, Sharp Exhibit No. 119.

147.    On June 30, 2010, the Bankruptcy Court having jurisdiction over Beshmada's bankruptcy case conducted a hearing and approved the "Partial Settlement Agreement" and the transactions contemplated by the terms thereof.  On July 28, 2010, the Bankruptcy Court entered an "Order Granting Motion of Beshmada, LLC for an Order Approving Partial Settlement Agreement Re Disputes Over Certain Collateral Related to 127 West 25th LLC and 241 Fifth Ave. Hotel, LLC" (the "Partial Settlement Approval Order").  Shavolian and Hazak filed a timely appeal of the Partial Settlement Approval Order, which appeal was heard by the United States District Court.  See, Sharp Exhibit No. 120.

148.    Pursuant to the terms and conditions of the Partial Settlement Agreement as approved by the Bankruptcy Court (which also included a transaction concerning N.Y. 18, LLC's membership interest in 127 West 25th LLC), Beshmada agreed to quitclaim all of its interest in 241 Delaware to Nader & Sons, LLC and Sisko Enterprises LLC for the payment of $250,000 to Beshmada and N.Y. 18, LLC.  See, Sharp Exhibit No. 120.

149.    On July 28, 2010, the Bankruptcy Court entered that "Order Granting Motion, as Modified, For Relief From the Automatic Stay" (docket no. 151) which granted 241 Delaware relief from the automatic stay to commence an arbitration proceeding against Beshmada in accordance with section 7.02 of the 241 Delaware Operating Agreement with regard to the issuance of a capital call upon Beshmada, provided that all costs associated with such arbitration shall be paid by 241 Delaware, and not Beshmada.

150.    On July 30, 2010, the New York Supreme Court, in the foreclosure action

JMBM Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1  commenced by Inland, entered an "Order" which, among other things, (a) granted Inland's motion

2  for summary judgment and ordered that the answers of the responding defendants, including 241

3  Delaware, be stricken and converted to limited notices of appearance, and (b) appointed Bruce

4  Mason Feffer as "referee" to compute the amount of the debt owing to Inland and to conduct a

5  hearing to determine whether the 241 Property should be sold as one parcel or separate parcels and

6  make a recommendation and report to the Court.  See, Sharp Exhibit No. 121.

7       151.    On or about August 12, 2010, Shavolian, individually and as nominee for

8  241Equities LLC, a Delaware limited liability company ("241 Equities"), and Terrace RE, LLC, a

9  New York limited liability company ("Terrace RE"), entered into a "Loan Purchase Agreement."

10  Pursuant to the Loan Purchase Agreement, (a) "[Shavolian] agrees to sell, assign and transfer to

11  [Terrace RE] its entire right, title and interest in, and [Terrace RE] agrees to purchase from

12  [Shavolian], the [Inland] Loan" and (b) the purchase price to be paid by Terrace RE to Shavolian is

13  $20,600,000, payable as follows: (i) $4,500,000 upon execution of the Loan Purchase Agreement,

14  (ii) $2,362,500 no later than September 23, 2010, (iii) $2,362,500 no later than December 20, 2010,

15  and (iv) $11,375,000 upon Closing.  See, Sharp Exhibit No. 122.

16       152.    On or about December 6, 2010, Shavolian, individually and as nominee for

17  241Equities, and Terrace RE entered into an "Amendment to Loan Purchase Agreement" whereby,

18  among other things, (a) Terrace RE agreed to make that payment of $2,362,500 due to Shavolian

19  under the Loan Purchase Agreement no later than December 20, 2010, directly to Inland, (b)

20  Terrace RE agreed to pay Inland, simultaneous with the above referenced $2,362,500 payment, the

21  additional sum of $129,002.92 and receive a credit for such money against the sums due to

22  Shavolian under the Loan Purchase Agreement, (c) Terrace RE shall file a motion in the foreclosure

23  action commenced by Inland to substitute in as the new substituted plaintiff, and (d) Shavolian

24  agrees to execute, on behalf of 241 Delaware, an application for a permit for the demolition of the

25  structure on the 241 Property and deliver such to Terrace RE.  See, Sharp Exhibit No. 123.

26       153.    On or about August 5, 2010, 241 Delaware commenced, in the New York

27  Supreme Court, an action against GSY Corp. ("GSY") and Hazan seeking (a) an injunction to

28  compel the removal and expungement of the GSY UCC 1 and (b) damages (the "GSY Action").

PRINTED ON

RECYCLED PAPER
LA 11431716v3

JMBM | Jeffer Mangels Butler & Mitchell LLP

154.    In the course of the GSY Action, 241 Delaware filed the following: (a) "Affidavit of Facts" signed by Shavolian, sworn on October 14, 2010, wherein paragraph 9 states: "As a result of the Defendants [GSY and Hazan's] improper and unlawful conduct [in recording the GSY UCC 1], the Plaintiff [241 Delaware] has been unable to extend and/or refinance its mortgage on the [241 Property].  Thus, by reason of Defendants' unlawful tortious interference with [241 Delaware's] contractual and business relations, as well as [241 Delaware's] reputation and prospective economic advantage, [241 Delaware] has been severely damaged.", (b) "Affirmation in Opposition to Defendant GSY Corp.'s Motion and in Support of Cross-Motion for Summary Judgment" signed by Shavolian, sworn on May 24, 2012, wherein paragraph 14 states: "Further, as a result of the Defendants [GSY and Hazan's] improper and unlawful conduct [in recording the GSY UCC 1], Plaintiff [241 Delaware] was unable to extend and/or refinance its mortgage on the [241 Property] and eventually lost the [241 Property] in foreclosure.  Thus, by reason of Defendants' foregoing unlawful tortious interference with [241 Delaware's] contractual and business relations, and [241 Delaware's] reputation and prospective economic advantage, [241 Delaware] has been severely damaged.", and (c) "Affirmation in Opposition to Motion and in Support of Cross-Motion" signed by Castro, under the penalty of perjury, on March 7, 2014, wherein paragraph 16 states: "As a direct result of the improper and unlawful conduct of GSY and Hazan [in recording the GSY UCC 1], the Plaintiff [241 Delaware] was unable to extend and/or refinance its mortgage on the [241 Property].  In fact, [241 Delaware] had viable refinancing options extinguished as a direct consequence of GSY's refusal to remove the UCC-1 Financing Statement of record.  Further, [241 Delaware] eventually lost the [241 Property] in foreclosure due to the improper filing of the UCC-1 Financing Statement by GSY and Hazan, a multimillion dollar loss." See, Sharp Exhibit No. 124, 125 and 126.

155.    On September 17, 2010, Terrace RE, in satisfaction of its obligation under the Loan Purchase Agreement to pay Shavolian the sum of $2,362,500 by September 23, 2010, paid directly to Inland the sum of $2,362,500, which sum was due from Shavolian to Inland under the Forbearance Agreement by September 30, 2010.  See, Sharp Exhibit No. 127.

156.    On or about September 30, 2010, Mr. Feffer, the court appointed referee,

PRINTED ON
RECYCLED PAPER
LA 11431716v3

filed in the New York Supreme Court a "Report of Amount Due" which stated that (a) as of September 2, 2010, Inland was owed, under the Inland Note and Inland Mortgage, the sum of $31,944,121.62 and (b) the 241 Property should be sold as one parcel.  See, Sharp Exhibit No. 128.

157.    On December 2, 2010, Inland sent a letter, by email, to Shavolian entitled "Final Installment Payment" advising Shavolian that, as of December 9, 2010, the amount of the final installment due to Inland under the Forbearance Agreement is $2,491,502.92 plus per diem interest after December 9, 2010 of $229.69 and continuing attorney fees.  See, Sharp Exhibit No. 129.

158.    On December 3, 2010, Larry Drath, Shavolian's counsel, sent an email to Terrace RE's counsel, which (a) forwarded Inland's above referenced December 2, 2010 letter and (b) "requested that Terrace RE pay the entire payoff [to Inland] and will be entitled to a credit for the $128,991.92 portion that is [Shavolian's] responsibility."  See, Sharp Exhibit No. 130.

159.    On December 9, 2010, Terrace RE's counsel sent an email to Shavolian's counsel requesting that 241 Delaware execute the attached "Application Form" for the New York City Landmarks Preservation Commission with respect to the 241 Property.  See, Sharp Exhibit No. 131.

160.    On December 10, 2010, an "Assignment of Action" was executed between Inland and Terrace RE whereby Terrace RE replaced and substituted in as the new plaintiff in the foreclosure action commenced by Inland.  See, Sharp Exhibit No. 132.

161.    On December 10, 2010, Terrace RE, on behalf of Shavolian, and as required by the Loan Purchase Agreement, as amended, paid directly to Inland the sum of  $2,491,502.92, representing the final installment payment due to Inland by Shavolian under the Forbearance Agreement.

162.    On December 10, 2010, Inland executed and delivered to Terrace RE a "Mortgage Assignment" assigning to Terrace RE all of Inland's right, title and interest to the Inland Loan, including the Inland Note and Inland Mortgage.  On January 21, 2011, the "Mortgage Assignment" was recorded in the New York City Department of Finance Office of the City Register.  See, Sharp Exhibit No. 133.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON

RECYCLED PAPER
LA 11431716v3

163.    On January 12, 2011, Mr. Drath, Shavolian's attorney, delivered to Terrace RE's counsel a NYC Landmarks Preservation Commission Application Form for demolition on the 241 Property signed by Shavolian on behalf of the owner of the 241 Property. See, Sharp Exhibit No. 134.

164.    On February 3, 2011, the New York Supreme Court issued a ruling substituting Terrace RE as plaintiff in place of Inland in the foreclosure action commenced by Inland. See, Sharp Exhibit No. 135.

165.    On March 14, 2011, the New York Supreme Court entered, in the foreclosure action commenced by Inland, a "Judgment of Foreclosure and Sale" authorizing the referee, Mr. Feffer, to advertise and conduct a foreclosure sale of the 241 Property. See, Sharp Exhibit No. 136.

166.    The foreclosure sale of the 241 Property was originally scheduled for April 27, 2011 in the Rotunda at 60 Centre Street, New York, New York.

167.    Pursuant to the Loan Purchase Agreement, Terrace RE exercised its right to continue the April 27, 2011 foreclosure sale and such foreclosure sale was postponed into June, 2011.

168.    On May 24, 2011, the United States District Court, with The Honorable Gary Feess, judge presiding, issued its ruling dismissing Hazak's and Shavolian's appeal from the Partial Settlement Approval Order for lack of standing because such Order "did not diminish any of [Hazak's or Shavolian's] property, increase their burdens or detrimentally affect their rights." In its ruling dismissing the appeal from the Partial Settlement Approval Order, the Court found and ruled that the "Partial Settlement Agreement did not effectuate such a transfer [of an absolute assignment of Beshmada's membership interest in 241 Delaware]." See, Sharp Exhibit No. 137.

169.    In June, 2011, Mr. Feffer, as referee, conducted a public foreclosure sale of the 241 Property. Victor at Fifth, LLC ("Victor LLC"), an affiliate and nominee of Terrace RE, was the successful purchaser of the 241 Property at the foreclosure sale, having credit bid the sum of $13,500,000 due and owing under the Inland Note and Inland Mortgage.

170.    On June 23, 2011, Shavolian, Terrace RE and Victor LLC conducted a "closing" of and the completion of the transactions contemplated by the Loan Purchase Agreement.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

- 34 -

171.    At the June 23, 2011 closing, Mr. Feffer, as referee and grantor, executed and delivered to Victor LLC, as grantee, a "Referee's Deed" transferring title to the 241 Property to Victor LLC.  See, Sharp Exhibit No. 138.

172.    At the June 23, 2011 closing, Victor LLC/Terrace RE paid to Shavolian or to the account of Shavolian the sum of $11,148,497 in satisfaction of Terrace RE's obligations to Shavolian under the Loan Purchase Agreement.  See, Sharp Exhibit No. 139.

173.    Counsel for Terrace RE/Victor LLC and Shavolian each prepared a Closing Statement with respect to the June 23 closing of the transactions that occurred between them.  See, Sharp Exhibit No. 140 and 141.

174.    On October 7, 2011, counsel for Nader & Sons LLC and Sisko Enterprises, LLC sent a letter, by Federal Express, to Hazak, Attention: Shavolian, concerning 241 Delaware. Subsequently, Cicalese, on behalf of Beshmada, sent Hazak, Attention: Shavolian, a letter concerning the October 7, 2011 letter from Nader & Sons LLC and Sisko Enterprises, LLC.  See, Sharp Exhibit No. 142 and 143.

175.    On October 27, 2011, Hazak and 241 Delaware, as plaintiffs, filed, in the Supreme Court of New York, a "Verified Complaint" against Nader & Sons LLC and Sisko Enterprises, LLC seeking to declare Beshmada's pledge of its membership interest in 241 Delaware null and void (the "Hazak Nader NY Action").  See, Sharp Exhibit No. 144.

176.    On December 5, 2011, Mr. Drath, Shavolian's counsel, emailed to Shavolian a "copy of the closing report pertaining to the sale of the Loan."  See, Sharp Exhibit No. 141.

177.    On March 19, 2012, Shavolian sent an email to Mr. Drath asking: "Please send me this [closing report you prepared] in Microsoft word."  That same day, Mr. Drath emailed Shavolian a "Word version" of the closing report he prepared.  See, Sharp Exhibit No. 145 and 146.

178.    On March 19, 2012, Shavolian sent an email to Mr. Drath attaching Mr. Drath's closing report, as revised by Shavolian.  See, Sharp Exhibit No. 147.

179.    On March 20, 2012, Mr. Drath emailed a new revised closing report to Shavolian.  See, Sharp Exhibit No. 148.

180.    On July 3, 2012, the New York Supreme Court issued its "Final Disposition"

JMBM
Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER
LA 11431716v3

1    with respect to the Hazak Nader NY Action which stated, in part: "ORDERED that plaintiffs are

2    entitled to summary judgment is [sic] to the first cause of action for a declaratory judgment,

3    specifically that the transfer by Beshmada of its membership interest in [241 Delaware] is

4    unauthorized and therefore any purported assignment is null and void." See, Sharp Exhibit No. 149.

5

6                               **DISPUTED FACTS**[2]

7            The following issues of fact, and no others, remain to be litigated:

8            1.      Whether Shavolian ever told or communicated to Cicalese: (a) that the 241

9    Property, during 2009 and/or 2010, had no equity, (b) that Shavolian did not have sufficient funds to

10   maintain and develop the 241 Property, and (c) that Shavolian would have to file a personal

11   bankruptcy case due to his financial condition.

12           2.      Whether Shavolian ever told Raanan, in a telephone conversation on or about

13   May 18, 2009,  among them and Castro informing Raanan, among other things,: (a) it would take

14   about $1,000,000 in renovations to make the building habitable and be able to generate gross annual

15   income of $500,000, (b) that if 241 Delaware can hold on to the building for a year or two, 241

16   Delaware could find some equity, (c) that the 241 Property could not, at that time, be sold for an

17   amount in excess of the secured debt and claims, and (d) Shavolian does not have the funds to buy

18   out Beshmada or continue to make debt service payments.

19           3.      Whether a binding and enforceable call for "Additional Capital

20   Contributions" under the 241 Delaware Operating Agreement was ever made to Beshmada.

21           4.      Whether Beshmada was required to contribute additional capital to 241

22   Delaware.

23           5.      Whether Hazak, and by his guaranty, Shavolian, were required to make the

24   "True-Up Contribution" payment to Beshmada upon either the foreclosure sale of the 241 Property

25   to Victor LLC or July 31, 2011, the 4th anniversary of 241 Delaware's acquisition of the 241

26   _____

27           [2] To the extent that the Court determines that any of the following are issues of law, the
parties request that the Court deem it as such and determine the issue.

28

PRINTED ON

RECYCLED PAPER
LA 11431716v3

1   Property.  (241 Delaware and Hazak contend that this issue is not relevant and should not be

2   determined by this Court.)

3          6.      Whether a "Repayment Event" (as defined by the 241 Delaware Operating

4   Agreement occurred.  (241 Delaware and Hazak contend that this issue is not relevant.)

5          7.      Whether 241 Delaware met the stated criteria under the Inland Note to obtain

6   an extension of the Inland Note's maturity date.

7          8.      Whether the GSY UCC 1 caused 241 Delaware to lose the 241 Property.

8          9.      Whether the Pledge Agreement, and the transaction contemplated thereby,

9   caused 241 Delaware to lose the 241 Property.

10         10.     Whether the Pledge Agreement, and the transaction contemplated thereby,

11  resulted in 241 Delaware being unable to restructure the Inland Loan.

12         11.     Whether the Pledge Agreement, and the transaction contemplated thereby,

13  resulted in 241 Delaware being unable to raise the capital necessary to complete the development of

14  the 241 Property.

15         12.     Whether Panico of Inland advised Shavolian that if the consent of all

16  members of 241 Delaware was not obtained with respect to the Pledge Agreement, Inland would

17  not be able to refinance and/or restructure the Inland Loan.

18         13.     Whether the 241 Property could not be sold to a third party unless and until

19  the consent of Nader & Sons and Sisko Enterprises was obtained and whether Afshin Hakim was

20  aware of this.  (Sharp contends that this issue is irrelevant.)

21         14.     Whether the UCC 1 Financing Statement recorded by Nader & Sons in New

22  York on July 29, 2008, and terminated on June 10, 2010, caused 241 Delaware to lose the 241

23  Property.

24         15.     Whether the UCC 1 Financing Statement recorded by Nader & Sons in New

25  York on July 29, 2008, and terminated on June 10, 2010, resulted in 241 Delaware being unable to

26  restructure the Inland Loan.

27         16.     Whether the UCC 1 Financing Statement recorded by Nader & Sons in New

28  York on July 29, 2008, and terminated on June 10, 2010, resulted in 241 Delaware being unable to

1   raise the capital necessary to complete the development of the 241 Property.

2       17.     Whether Shavolian notified and informed Beshmada of the Forbearance

3   Agreement and its material terms.

4       18.     Whether Shavolian offered Beshmada the opportunity and right to participate

5   in the Forbearance Agreement and, if so, whether Cicalese, acting on behalf of Beshmada, refused

6   to participate in the Forbearance Agreement.

7       19.     Whether the Partial Settlement Agreement, and the transaction contemplated

8   thereby, caused 241 Delaware to lose the 241 Property.

9       20.     Whether the Partial Settlement Agreement, and the transaction contemplated

10  thereby, resulted in 241 Delaware being unable to restructure the Inland Loan.

11      21.     Whether the Partial Settlement Agreement, and the transaction contemplated

12  thereby, resulted in 241 Delaware being unable to raise the capital necessary to complete the

13  development of the 241 Property.

14      22.     Whether the "proposal" set forth in the Vision Capital Proposal Letter

15  represented a bona fide proposal for the transaction contemplated therein.

16      23.     Whether other lenders were willing to refinance the Inland Loan or provide

17  new sources of funds to 241 Delaware?

18      24.     Whether Shavolian, acting on behalf of Hazak and on behalf of 241

19  Delaware, obtained loan proposals from lenders other than Inland and Vision Capital Group LLC to

20  satisfy the Inland Loan and, if so, were those loan proposals communicated to Beshmada.

21      25.     Whether Shavolian, acting on behalf of Hazak and 241 Delaware, could not

22  close any new loans on the 241 Property to satisfy the Inland Loan, if any were offered, as a result

23  of Beshmada's alleged wrongful actions.

24      26.     Whether Inland refused to restructure and/or refinance the Inland Loan

25  because of the Pledge Agreement and the transaction contemplated thereby.

26      27.     Whether the GSY UCC 1 was an impediment to a restructuring and/or

27  refinance of the Inland Loan.

28      28.     Whether a title company would have insured any restructuring and/or

PRINTED ON

RECYCLED PAPER
LA 11431716v3

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  refinance of the Inland Loan in light of the Pledge Agreement, and the transaction contemplated

2  thereby, and the Partial Settlement Agreement, and the transaction contemplated thereby.  (Sharp

3  contends that this issue is irrelevant.)

4          29.    Whether 241 Delaware would have been able to restructure and/or refinance

5  the Inland Loan without title insurance.  (Sharp contends that this issue is irrelevant.)

6          30.    Whether the Partial Settlement Agreement, and the transaction contemplated

7  thereby, resulted in Beshmada having no interest of any kind in 241 Delaware.  (Sharp does not

8  believe that this is an issue.)

9          31.    Whether the 241 Property had any equity as of the June, 2011 foreclosure

10  sale of the 241 Property.

11          32.    What was the value of the 241 Property as of July 1, 2011.  (Sharp contends

12  that this issue is irrelevant.)

13          33.    How long would it have taken for a foreclosure proceeding to result in a

14  foreclosure sale of the 241 Property under applicable New York law and what affect would an

15  extension of the foreclosure sale have had on the value of the 241 Property as of the date of any

16  later foreclosure sale date.  (Sharp contends that this issue is irrelevant.)

17          34.    Whether 241 Delaware had any bona fide defense(s) to the foreclosure action

18  commenced by Inland concerning the 241 Property.

19          35.    Whether Cicalese was retained to provide the Trustees of the (i) Namco

20  bankruptcy estate and (ii) Namvar bankruptcy estate with general advice and counsel regarding real

21  estate matters and to review the various properties owned by Namvar and his entities, including the

22  241 Delaware Property.  (Sharp contends that this issue is irrelevant.)

23          36.    Whether Cicalese was qualified to provide advice on the status of the 241

24  Property.  (Sharp contends that this issue is irrelevant.)

25          37.    Whether Cicalese had experience with Manhattan, New York real estate.

26  (Sharp contends that this issue is irrelevant.)

27          38.    Whether Cicalese failed to act in a prudent manner in failing to obtain

28  updated appraisal reports for the 241 Property.

PRINTED ON
RECYCLED PAPER
LA 11431716v3

JMBM | Jeffer Mangels
Butler & Mitchell LLP

- 39 -

39.     Whether Cicalese had fiduciary obligations and a duty of good faith dealing, and, if so, did he violate his fiduciary obligations and duty of good faith dealing by refusing to consent to the Vision Capital Proposal Letter and allow 241 Delaware to restructure and/or refinance the Inland Loan on the terms set forth in the Vision Capital Proposal.

40.     Whether Cicalese (a) refused to allow 241 Delaware to rent the 241 Property and (b) unreasonably refused to consent to any offered restructuring or refinancing of the Inland Loan.

41.     Whether Hamid Taba and Greg Johnson, alleged employees of Namco Capital Group, Inc., were responsible for the maintenance of Beshmada's real estate holdings, including its interest in the 241Property.  (Sharp contends that this issue is irrelevant.)

42.     Whether Hamid Taba and Greg Johnson, alleged employees of Namco Capital Group, Inc., were in charge of all records for all entities related to Namco Capital Group, Inc. and/or Namvar and/or Namvar's family members.   (Sharp contends that this issue is irrelevant.)

43.     Whether Shavolian arranged to have the unsafe conditions described in the Unsafe Building Notice corrected and the 241 Property was secured.  (Sharp contends that this issue is irrelevant.)

## ISSUES OF LAW[3]

The following issues of law, and no others, remain to be litigated:

1.     Whether Beshmada breached the 241 Delaware Operating Agreement by failing to make "Additional Capital Contributions."

2.     Whether Beshmada breached the 241 Delaware Operating Agreement by the Pledge Agreement and the transaction contemplated therein and any performance thereunder.

3.     Whether Beshmada breached the 241 Delaware Operating Agreement by the

---

[3] To the extent that the Court determines that any of the following are issues of fact, the parties request that the Court deem it as such and determine the issue.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1    Partial Settlement Agreement and the transaction contemplated therein and any performance

2    thereunder.

3            4.    Whether Hazak breached the 241 Delaware Operating Agreement by failing

4    to pay the "True-Up Contribution" payment, pursuant to Article 4.02 of the 241 Delaware

5    Operating Agreement, to Beshmada upon either the foreclosure sale of the 241 Property to Victor

6    LLC or July 31, 2011, the 4th anniversary of 241 Delaware's acquisition of the 241 Property.

7            5.    What was the proximate cause of 241 Delaware's loss of the 241 Property.

8            6.    If Beshmada breached the 241 Delaware Operating Agreement, was such

9    breach the proximate cause of 241 Delaware's loss of the 241 Property.

10            7.    If Beshmada's actions/inaction and/or breach of the 241 Operating

11    Agreement was the proximate cause of 241 Delaware's loss of the 241Property, did 241 Delaware

12    and/or Hazak mitigate their alleged damages.

13            8.    If Beshmada's actions/inactions and/or breach of the 241 Operating

14    Agreement was the proximate cause of 241 Delaware's loss of the 241Property, what is the amount

15    of damages suffered by 241 Delaware that were proximately caused by such action/inaction and/or

16    breach.

17            9.    Whether Ezri Namvar's authorization of Beshmada's entry into the Pledge

18    Agreement was knowing and deliberate and thus a breach of his fiduciary duty, if any, to Hazak

19    and/or 241 Delaware.  (Sharp contends that this issue is irrelevant.)

20            10.    Did Beshmada owe a fiduciary duty to Hazak and/or 241 Delaware and, if so,

21    did Beshmada's entry into (a) the Pledge Agreement and/or (b) the Partial Settlement Agreement

22    breach such fiduciary duty.

23            11.    Is the prevailing party entitled to an award of attorney's fees.

24

25    **EXHIBITS**

26            Attached is a list of exhibits intended to be offered at the trial by each party, other

27    than exhibits to be used for impeachment only.  The parties have exchanged copies of all exhibits.

28    The parties' respective list of exhibits is attached hereto as Exhibits "A" and "B."

JMBM | Jeffer Mangels Butler & Mitchell LLP

1 | 

**WITNESSES**

The parties have exchanged the attached list of witnesses to be called at trial.  The parties' respective list of witnesses is attached hereto as Exhibits "C" and "D."

**OTHER MATTERS**

Other matters that might affect the trial such as anticipated motions in limine, motions to withdraw the reference due to timely jury trial demand pursuant to LBR 9015-2, or other pre-trial motions are:

For Bradley D. Sharp, Trustee of The Beshmada Liquidating Trust, as successor to Beshmada, LLC: Motions in limine to (a) preclude use of documents responsive to discovery but not produced, (b) to preclude any opinions of experts not expressed in any report provided or deposition taken prior to the discovery cutoff date and (c) preclude the testimony of any expert for 241 Delaware or Hazak, other than the expert testimony of David Fields.

For 241 Delaware and Hazak:  Motions in limine to (a) preclude use of documents responsive to discovery but not produced, (b) to preclude any opinions of experts not expressed in any report provided or deposition taken prior to the discovery cutoff date, and (c) to preclude Sharp from making the claim/asserting the defense that (i) Hazak, and by his guaranty, Shavolian, were required to make the "True-Up Contribution" payment to Beshmada upon either the foreclosure sale of the 241 Property to Victor LLC, or a "Repayment Event", or July 31, 2011, the 4th anniversary of 241 Delaware's acquisition of the 241 Property and (ii) that a "Repayment Event" (as defined by the 241 Delaware Operating Agreement) occurred.

**DISCOVERY**

All discovery is complete.  The discovery cutoff date was October 17, 2014.

**TRIAL READINESS**

The parties are ready for trial.

PRINTED ON

RECYCLED PAPER
LA 11431716v3

Jeffer Mangels
Butler & Mitchell LLP

JMBM

## LENGTH OF TRIAL

The estimated length of trial (assuming that the Court will require declarations for the direct testimony of all witnesses under the control of the parties) is:  Sharp believes 3 days and 241/Hazak believes 5 days.

## PRE-TRIAL STIPULATION SUPERSEDES PLEADINGS

The foregoing admissions have been made by the parties, and the parties have specified the foregoing issues of fact and law remaining to be litigated.  Therefore, this stipulation, when approved by order of the Court, shall supersede the pleadings and govern the course of trial of this cause, unless modified to prevent manifest injustice.

Dated:  January 20, 2015             JEFFER MANGELS BUTLER & MITCHELL LLP


                                     By:/s/ Thomas M. Geher
                                        THOMAS M. GEHER,
                                        Attorneys for Former Debtor and Debtor in Possession,
                                        Beshmada, LLC, and its successor The Beshmada
                                        Liquidating Trust

Dated:  January 20, 2015             CLAUDE CASTRO & ASSOCIATES/JOHN P. KREIS, PC


                                     By:_____
                                        CLAUDE CASTRO/JOHN KREIS,
                                        Attorneys for 241 Fifth Ave. Hotel, LLC, a Delaware
                                        limited liability company, and Hazak Associates LLC

PRINTED ON
RECYCLED PAPER
LA 11431716v3

1

## LENGTH OF TRIAL

2          The estimated length of trial (assuming that the Court will require declarations for

3    the direct testimony of all witnesses under the control of the parties) is:  Sharp believes 3 days and

4    241/Hazak believes 5 days.

5

6                  **PRE-TRIAL STIPULATION SUPERSEDES PLEADINGS**

7          The foregoing admissions have been made by the parties, and the parties have

8    specified the foregoing issues of fact and law remaining to be litigated.  Therefore, this stipulation,

9    when approved by order of the Court, shall supersede the pleadings and govern the course of trial of

10   this cause, unless modified to prevent manifest injustice.

11

12   Dated:  January 20, 2015                  JEFFER MANGELS BUTLER & MITCHELL LLP

13

14                                            By:_____
                                                  THOMAS M. GEHER,
15                                                Attorneys for Former Debtor and Debtor in Possession,
                                                  Beshmada, LLC, and its successor The Beshmada
16                                                Liquidating Trust

17

18   Dated:  January 20, 2015                  CLAUDE CASTRO & ASSOCIATES/JOHN P. KREIS,
                                                  PC
19

20                                            By:_____
                                                  CLAUDE CASTRO/JOHN KREIS,
21                                                Attorneys for 241 Fifth Ave. Hotel, LLC, a Delaware
                                                  limited liability company, and Hazak Associates LLC
22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 11431716v3

**EXHIBIT A**

# SHARP'S EXHIBIT LIST

Below is a list of Exhibits, other than Exhibits for impeachment purposes, which Sharp intends to offer at the trial of this matter and any objections by Hazak and 241 Delaware to such Exhibits.

| EXHIBIT NO. | DESCRIPTION OF EXHIBIT | OBJECTION |
|---|---|---|
| 1 | Proof of Claim filed on November 15, 2010 by 241 Delaware and Hazak, designated as Claim 18-1. | |
| 2 | Amended and Restated Proof of Claim of 241 Fifth Ave. Hotel, LLC and Hazak Associates, LLC filed on January 7, 2014 ad docket. No. 658. | |
| 3 | Purchase and Sale Agreement, made January 3, 2007, between 241 5th Ave., LLC, as seller, and 241 New York, as buyer. | |
| 4 | First Amendment to Purchase and Sale Agreement, dated as of February 20, 2007. | |
| 5 | Certificate of Formation of 241 Delaware | |
| 6 | Certificate of Merger of 241 New York Into 241 Delaware Under Section 1003 of the Limited Liability Company Law | |
| 7 | State of Delaware Certificate of Merger of a Foreign Limited Liability Company into a Domestic Limited Liability Company | |
| 8 | Limited Liability Company Agreement of 241 Delaware | |
| 9 | Guaranty, dated as of July 19, 2007, between Namvar, as guarantor, and Hazak | |
| 10 | Guaranty, dated as of July 19, 2007, between Shavolian, as guarantor, and Beshmada | |
| 11 | Recorded Bargain and Sale Deed, made as of July 18, 2007, between 241 5th Ave., LLC, as | |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER
LA 11453607v1

| | | |
|---|---|---|
| 1 | | grantor, and 241 New York, as grantee |
| 2 | 12 | Consolidated, Amended and Restated |
| 3 | | Installment Note, dated July 19, 2007, in the principal sum of $2,2750,000 and signed by |
| 4 | | 241 Delaware |
| 5 | 13 | Recorded Consolidated, Amended and |
| 6 | | Restated Mortgage, Security Agreement, Assignment of Rents and Financing Statement, |
| 7 | | dated July 19, 2007, between 241 Delaware, as mortgagor, and Inland, as mortgagee |
| 8 | 14 | Limited Guaranty Agreement, dated July 19, |
| 9 | | 2007 |
| 10 | 15 | Unsigned (a) Option Agreement between |
| 11 | | Beshmada and 241 Partners, LLC and (b) Membership Purchase Agreement between |
| 12 | | Beshmada, 241 Partners, LLC and Hazak |
| 13 | 16 | Email chain with latest in time email being |
| 14 | | email of March 27, 2008, at 3:39 pm, from Shavolian to Namvar |
| 15 | 17 | April 4, 2008 email chain with latest in time |
| 16 | | email being email of April 4, 2008 at 12:36 am, from Shavolian to Namvar |
| 17 | 18 | Email of April 7, 2008, at 11:15 am, from |
| 18 | | Shavolian to Namvar forwarding email of |
| 19 | | February 4, 2008, from Shavolian to Mr. Herzberg |
| 20 | 19 | Emails of (a) May 1, 2008, at 4:11 pm, from |
| 21 | | Jackson to Hazan and (b) May 6, 2008, at |
| 22 | | 12:23 pm, from Hazan to Shavolian |
| 23 | 20 | Emails of (a) May 6, 2008, at 12:25 pm, from |
| 24 | | Shavolian to Namvar and (b) May 6, 2008, at 12:33 pm, from Namvar to Shavolian |
| 25 | 21 | Emails of (a) May 8, 2008, at 12:24 pm, from |
| 26 | | Jackson to Hazan and (b) May 9, 2008, at 11:35 am, from Hazan to Shavolian |
| 27 | 22 | Emails of (a) May 1, 2008, at 4:11 pm, from |
| 28 | | Jackson to Hazan and (b) May 14, 2008, at |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

| | | |
|---|---|---|
| 1 | | 1:09 pm, from Shavolian to Namvar |
| 2 | 23 | Emails of (a) May 1, 2008, at 4:11 pm, from |
| 3 | | Jackson to Hazan, (b) May 14, 2008, at 1:09 pm, from Shavolian to Namvar, (c) May 14, |
| 4 | | 2008, at 4:11 pm, from Namvar to Shavolian and (d) May 15, 2008, at 10:48 am, from |
| 5 | | Shavolian to Namvar |
| 6 | 24 | Emails of (a) May 1, 2008, at 4:11 pm, from |
| 7 | | Jackson to Hazan, (b) May 14, 2008, at 4:09 pm, from Shavolian to Namvar, (c) May 14, |
| 8 | | 2008, at 1:53 pm, from Shavolian to Namvar |
| 9 | 25 | Email string with latest in time email being |
| 10 | | email of May 14, 2008, at 1:22 pm, from Shavolian to Namvar (balance of emails are |
| 11 | | between Shavolian and personnel at The Carlton Group) |
| 12 | | |
| 13 | 26 | May 15, 2008, letter entitled Notice of Default from Inland to 241 Delaware |
| 14 | 27 | Emails of (a) May 1, 2008, at 4:11 pm, from |
| 15 | | Jackson to Hazan, (b) May 14, 2008, at 1:09 pm, from Shavolian to Namvar, (c) May 14, |
| 16 | | 2008, at 4:11 pm, from Namvar to Shavolian and (d) May 15, 2008, at 10:48 am, from |
| 17 | | Shavolian to Namvar |
| 18 | 28 | Email May 19, 2008, at 9:15 am, from |
| 19 | | Shavolian to Namvar |
| 20 | 29 | Emails of (a) May 21, 2008, at 7:03 pm, from |
| 21 | | Shavolian to Namvar and Mr. Taba, (b) May 22, 2008, at 3:43 pm, from Mr. Taba to |
| 22 | | Shavolian and (c) May 22, 2008, at 1:07 pm, from Shavolian to Taba |
| 23 | 30 | Emails of (a) June 3, 2008, at 11:42 am, from |
| 24 | | Inland to Shavolian and (b) June 3, 2008, at 10:57 am, from Shavolian to Namvar |
| 25 | | |
| 26 | 31 | Loan, Pledge and Security Agreement, dated as of June 12, 2008, and First Amendment to |
| 27 | | Loan, Pledge and Security Agreement |
| 28 | | |

Jeffer Mangels
Butler & Mitchell LLP

JMBM

| 32 | Emails of (a) June 16, 2008, at 1:29 pm, from Jackson to Shavolian and Hazan and (b) June 17, 2008, at 3:13 pm, from Shavolian to Namvar |
| 33 | Emails of (a) June 16, 2008, at 1:29 pm, from Jackson to Shavolian and Hazan, (b) June 17, 2008, at 3:13 pm, from Shavolian to Namvar and (c) June 17, 2008, at 4:46 pm, from Namvar to Shavolian |
| 34 | Email string of June 16 and 17, 2018 emails between Namvar and Shavolian after email of June 16, 2008, at 1:29 pm, from Jackson to Shavolian and Hazan |
| 35 | Email string with the latest in time email being that email of June 18, 2008, at 4:39 pm, from Shavolian to Namvar |
| 36 | Emails of June 24, 2008, at 12:41 pm and 10:03 am, from Shavolian to Namvar and Mr. Taba |
| 37 | Emails string with the latest in time email being that email of December 10, 2009, at 11:17 pm, from Shavolian to Castro and earliest in time being June 28, 2008 email from Mr. Rothman to Mr. Hakim |
| 38 | Emails of (a) July 1, 2008, at 12:58 pm, from Mr. Hakim to Shavolian and (b) November 10, 2008, at 6:50 pm, from Shavolian to Castro and finklaw@gmail.com |
| 39 | Email of July 7, 2008, at 11:07 am, from Shavolian to Namvar and Mr. Taba |
| 40 | Email string with the latest in time email being that email of July 18, 2008, at 11:23 am, from Namvar to Shavolian |
| 41 | Email of July 21, 2008, at 2:37 pm, from Shavolian to Namvar |
| 42 | Letter of July 24, 2008 from Inland to 241 Delaware with enclosure executed by Shavolian |

JMBM Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11453607v1

| | | |
|---|---|---|
| 1 | 43 | UCC 1 Financing Statement of Nader & Sons, LLC, recorded on July 29, 2008, in the NYC Department of Finance Office of the City Register |
| 4 | 44 | UCC 1 Financing Statement of GSY Corp., recorded on August 1, 2008, in the NYC Department of Finance Office of the City Register |
| 7 | 45 | Asbestos Project Notification, signed and dated August 14, 2008 |
| 8 | 46 | Email of August 20, 2008, at 2:21 pm, from Jackson to Shavolian |
| 10 | 47 | Email string consisting of (a) August 20, 2008, at 2:21 pm, from Jackson to Shavolian, (b) August 22, 2008, at 12:08 pm, from Shavolian to Namvar and Mr. Taba, (c) August 22, 2008, at 3:43 pm, from Namvar to Shavolian and Mr. Taba, and (d) August 22, 2008, at 12:48 pm, from Shavolian to Namvar and Mr. Taba |
| 15 | 48 | Email string starting with latest email of August 25, 2008, at 9:19 am, from Shavolian to Namvar and Mr. Taba |
| 17 | 49 | Email string starting with latest email of August 28, 2008, at 10:18 am, from Shavolian to Namvar and Mr. Taba |
| 19 | 50 | Letter dated August 29, 2008, and entitled Notice of Default, from Inland to 241 Delaware |
| 22 | 51 | Email string with latest in time email of September 10, 2008, at 12:26 pm, from Shavolian to Jackson attaching executing Pre-Negotiation Letter, dated September 5, 2008 |
| 25 | 52 | Email string consisting of (a) September 10, 2008 email from Shavolian to Barca, (b) September 10, 2008 email from Jackson to Shavolian, (c) September 10, 2007 email from Shavolian to Jackson, (d) September 16, 2008 email from Barca to Shavolian, and (e) September 17, 2008 email from Shavolian to |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11453607v1

| | | |
|---|---|---|
| 1 | | Barca with attachments |
| 2 | 53 | Email string of September 17 and 18, 2008, between Namvar and Shavolian |
| 3 | | |
| 4 | 54 | Email string with latest email being email of September 29, 2008, at 11:32 am, from Shavolian to Barca with attached agreements with Kimpton |
| 5 | | |
| 6 | | |
| 7 | 55 | Development Budget Summary/Pre-Opening Budget/Development Budget Summary prepared by Kimpton |
| 8 | | |
| 9 | 56 | Emails of (a) September 30, 2008, at 11:58 am, from Berghorst to Shavolian, (b) October 1, 2008, at 3:55 pm, from Barca to Shavolian, and (c) October 1, 2008, at 4:47 pm, from Shavolian to Namvar and Mr. Taba |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | 57 | Emails of (a) October 1, 2008, at 16:03 pm, from Susan Dzija to Shavolian and (b) October 1, 2008, at 10:17 pm, from Shavolian to Namvar |
| 14 | | |
| 15 | | |
| 16 | 58 | Permit- Certificate of Appropriateness, issued October 20, 2008 |
| 17 | 59 | Email of October 23, 2008, at 5:50 pm, from Shavolian to Namvar |
| 18 | | |
| 19 | 60 | Email of October 31, 2008, at 10:28 am, from Berghorst to Shavolian |
| 20 | | |
| 21 | 61 | Emails of (a) November 14, 2008, at 2:16 pm, from Barca to Shavolian, (b) December 16, 2008, at 1:27 pm, from Shavolian to Hazan and (c) December 16, 2008, at 10:30 pm, from Hazan to Shavolian |
| 22 | | |
| 23 | | |
| 24 | 62 | Emails of November 25, 2008, between Shavolian and Mr. Sullivan |
| 25 | | |
| 26 | 63 | December 5, 2008 letter from Namvar to Shavolian with email cover transmittal page |
| 27 | | |
| 28 | 64 | Letter, dated December 8, 2008 from Inland to 241 Delaware |

PRINTED ON
RECYCLED PAPER
LA 11453607v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

- 6 -

| 65 | Email of January 12, 2009, at 1:51 pm, from Panico to Shavolian |
| 66 | Email string of January 12 – 15, 2008 between Panico and Shavolian |
| 67 | Emails of (a) January 29, 2009, at 5:31 pm, from Mr. Caruso to Mr. Leuzzi, (b) February 5, 2009, at 5:24 pm, from Mr. Leuzzi to Mr. Hakim, and (c) February 5, 2009, at 1:04 pm, from Mr. Hakim to Namvar, Mr. Grobstein and hweg@pwkllp.com |
| 68 | Emails of (a) January 29, 2009, at 5:31 pm, from Mr. Caruso to Mr. Leuzzi, (b) February 5, 2009, at 5:24 pm, from Mr. Leuzzi to Mr. Hakim, (c) February 5, 2009, at 1:04 pm, from Mr. Hakim to Namvar, Mr. Grobstein and hweg@pwkllp.com, (d) February 5, 2009, at 2:32 pm, from Namvar to Mr. Hakim, Mr. Grobstein and hweg@pwkllp.com, and (e) February 5, 2009, at 2:51 pm, from Mr. Hakim to Namvar, Mr. Grobstein and hweg@pwkllp.com |
| 69 | Letter Dated February 12, 2009, from Shavolian to Beshmada and Greenberg Traurig, LLP |
| 70 | "Notice" from The City of New York Department of Buildings, dated February 13, 2009 re 241 Property unsafe |
| 71 | Email, dated March 26, 2009, at 2:03 pm, from Panico to Shavolian re February 13, 2009 Notice from The City of New York Department of Buildings |
| 72 | Email, dated April 3, 2009, at 9:16 am, from Panico to Shavolian |
| 73 | Emails of (a) April 6, 2009, at 4:32 pm, from Mr. Hakim to Mr. Leuzzi, (b) February 5, 2009, at 5:24 am, from Mr. Leuzzi to Mr. Hakim, and (c) January 29, 2009, at 5:31 pm, from Mr. Caruso to Mr. Leuzzi |

PRINTED ON

RECYCLED PAPER
LA 11453607v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

| | | |
|---|---|---|
| 74 | Emails of (a) April 7, 2009, at 1:39 pm, from Mr. Leuzzi to Mr. Hakim, (b) April 6, 2009, at 4:32 pm, from Mr. Hakim to Mr. Leuzzi, (c) February 5, 2009, at 5:24 am, from Mr. Leuzzi to Mr. Hakim, and (d) January 29, 2009, at 5:31 pm, from Mr. Caruso to Mr. Leuzzi | |
| 75 | Emails of (a) May 15, 2009, at 2:52 pm, from Raanan to Castro and (b) May 15, 2009, at 2:05 pm, from Castro to Raanan | |
| 76 | Letter, dated May 19, 2009, from Hazak to Beshmada and Namvar | |
| 77 | Email, dated May 22, 2009, at 7:12 am, from Alice Fairberg, on behalf of Castro, to Raanan, with attachments | |
| 78 | "Notice of New Executive Committee Member & Change of Address" dated June 24, 2009, and Action By Written Consent of Sole Manager of Beshmada, LLC a California limited liability company" with facsimile confirmations | |
| 79 | Email string with (a) the latest in time email being email of July 13, 2009, at 5:59 pm, from Mr. Hakim to Shavolian and (b) earliest in time email being email of June 24, 2009, at 2:16 pm, from Mr. Hakim to Mr. Leuzzi | |
| 80 | Email of July 2, 2009, at 10:18 am, from Mr. Hakim to Shavolian and Castro with attachments | |
| 81 | Email string with (a) the latest in time email being email of July 14, 2009, at 2:24 pm, from Shavolian to Mr. Hakim and Castro and (b) earliest in time email being email of June 24, 2009, at 2:16 pm, from Mr. Hakim to Mr. Leuzzi | |
| 82 | Email of August 3, 2009, at 12:43 pm, from Mr. Lynch to Shavolian with attached letter of August 3, 2009 | |
| 83 | Email of August 11, 2009, at 10:31 am, from Hedvat to Shavolian with attached Certificate | |

JMBM | Jeffer Mangels Butler & Mitchell LLP

| | | |
|---|---|---|
| 1 | | of Liability Insurance |
| 2 | 84 | Email string with (a) the latest in time email being email of August 17, 2009, at 9:58 am, from Shavolian to Mr. Hakim and Castro and (b) earliest in time email being email of June 24, 2009, at 2:16 pm, from Mr. Hakim to Mr. Leuzzi |
| 6 | 85 | Email of August 14, 2009, at 7:26 am, from Mr. Weiss to Cicalese with attached Restricted Appraisal Report dated August 12, 2009 |
| 8 | 86 | Summons and Complaint filed by Inland on September 4, 2009, in the Supreme Court of New York County of New York against 241 Delaware and others re foreclosure of 241 Property |
| 12 | 87 | Emails of September 9, 2009 from Alice Fairberg on behalf of Castro to Mr. Sedor with attached letter dated September 8, 2009, from Castro to Mr. Sedor |
| 15 | 88 | Emails of September 9, 2009 (a) from Mr. Hakim to Castro with attached letter dated September 8, 2009, from Castro to Mr. Sedor and (b) from Alice Fairberg on behalf of Castro to Mr. Sedor |
| 18 | 89 | Emails of (a) September 16, 2009, at 6:34 pm, from Rendak to Shavolian with attached term sheet and (b) September 17, 2009, at 7:30 am, from Shavolian to Mr. Drath |
| 21 | 90 | Emails of (a) September 29, 2009, at 5:43 pm, from Ms. Zalatoris of Inland to Shavolian with attached agreement and (b) September 29, 2009, at 2:46 am, from Shavolian to Mr. Drath |
| 24 | 91 | An email string containing a series of October 6, 2009 emails between Rendak and Shavolian, and Mr. Drath and Rendak and an email of October 7, 2009, at 2:24 pm, from Shavolian to Mr. Drath with signed term sheet |
| 27 | 92 | Email of October 20, 2009, at 11:23 am, from Mr. Tabatabai to Shavolian with attachment re |

PRINTED ON

RECYCLED PAPER
LA 11453607v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

| 1 | | Beshmada capital contributions |
| 2 | 93 | Beshmada LLC Account QuickReport with |
| 3 | | supporting bank records and cancelled checks |
| 4 | 94 | Emails of (a) October 26, 2009, at 11:02 am, from Hedvat to Shavolian, (b) October 26, 2009, at 10:06 am, from Shavolian to Barca and (c) October 27, 2009, at 10:00 am, from Barca to Shavolian |
| 5 | | |
| 6 | | |
| 7 | 95 | Emails of (a) November 17, 2009, at 9:09 am, from Castro to Mr. Sedor and (B) November 18, 2009, at 6:12 pm, from Mr. Sedor to Castro |
| 8 | | |
| 9 | | |
| 10 | 96 | Letter dated November 16, 2009, from Shavolian to Cicalese, with cover email from C. Giles, dated December 3, 2009 |
| 11 | | |
| 12 | 97 | Fully executed Limited Forbearance Agreement between Shavolian and Inland |
| 13 | | |
| 14 | 98 | Emails of (a) October 22, 2009, at 11:08 am, from Ms. Shaindy to Barca, (b) October 23, 2009, at 2:15 pm, from Barca to Shavolian and (c) December 22, 2009, at 7:31 pm, from Barca to Shavolian with attachments |
| 15 | | |
| 16 | | |
| 17 | 99 | January 13, 2009 emails between Shavolian and Hazan |
| 18 | | |
| 19 | 100 | Fully executed Partial Settlement Agreement |
| 20 | 101 | Unsigned and Undated letter from Vision Capital Partners, LLC to 241 Delaware |
| 21 | | |
| 22 | 102 | Articles of Organization of Vision Capital Partners LLC |
| 23 | | |
| 24 | 103 | Articles of Organization of Vision Capital Group LLC |
| 25 | 104 | Emails of (a) May 4, 2010, at 5:34 pm, from Shavolian to Cicalese and (b) June 15, 2010, at 3:27 pm, from Shavolian to Mr. Drath |
| 26 | | |
| 27 | 105 | Notice of Default, dated May 14, 2010, from Hazak to  Beshmada c/o Cicalese |
| 28 | | |

JMBM | Jeffer Mangels Butler & Mitchell LLP

| | | |
|---|---|---|
| 1 | 106 | Letter, dated May 18, 2010, from 241 Delaware to Beshmada and Greenberg Traurig, LLP |
| 3 | 107 | Email dated May 24, 2010, at 7:52 am, from Cicalese to Shavolian and others |
| 5 | 108 | Email string with (a) the latest in time email being email of June 22, 2010, at 3:24 pm, from Shavolian to Mr. Kreis and Castro and (b) earliest in time email being email of May 24, 2010, at 10:51 am, from Cicalese to Shavolian |
| 8 | 109 | Email dated May 24, 2010, at 2:58 pm, from Mr. Kreis to Raanan |
| 10 | 110 | Email string with (a) the latest in time email being email of May 31, 2010, at 9:36 am, from Cicalese to Shavolian and (b) earliest in time email being email of May 24, 2010, at 10:51 am, from Cicalese to Shavolian |
| 13 | 111 | Email string with (a) the latest in time email being email of May 31, 2010, at 1:21 pm, from Raanan to Shavolian and (b) earliest in time email being email of May 24, 2010, at 10:51 am, from Cicalese to Shavolian |
| 17 | 112 | Letter dated, June 9, 2010, from Beshmada to Shavolian, sent by facsimile and email |
| 19 | 113 | UCC Financing Statement Amendment (termination) recorded by Nader & Sons, LLC on June 10, 2010 in NYC Department of Finance Office of the City Register |
| 22 | 114 | Unsigned letter dated June 16, 2010, from Vision Capital Partners LLC to 241 Delaware and October 22, 2009 letter from Madison Title Agency, Inc. to Barca with enclosures |
| 24 | 115 | Email of June 21, 2010, at 4:22 pm, from Shavolian to Cicalese attaching letter of June 21, 2010 from Shavolian to Cicalese |
| 27 | 116 | Letter, dated June 22, 2010 from Beshmada (Cicalese) to Shavolian |

PRINTED ON

RECYCLED PAPER
LA 11453607v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

| 117 | Letter, dated June 22, 2010, from Shavolian to Cicalese |
| 118 | Emails of (a) June 25, 2010, at 12:55 pm, from Mr. Kreis to Raanan and (b) June 26, 2010, at 8:12 am, from Raanan to Mr. Kreis |
| 119 | Email of June 28, 2010, at 10:04 am, from Ms. Giles to Shavolian attaching letter, dated June 28, 2010, from Beshmada (Cicalese) to Shavolian |
| 120 | Order Granting Motion of Beshmada, LLC for an Order Approving Partial Settlement Agreement Re Disputes Over Certain Collateral Related to 127 West 25th LLC and 241 Fifth Ave. Hotel, LLC, entered in Beshmada's bankruptcy case on July 28, 2010 |
| 121 | Order signed and entered on July 30, 2010, by the New York Supreme Court in the foreclosure action against the 241 Property commenced by Inland |
| 122 | Loan Purchase Agreement (fully executed) |
| 123 | Amendment to Loan Purchase Agreement (fully executed) |
| 124 | Affidavit of Facts, dated October 14, 2010, signed by Shavolian, and filed in the GSY Action |
| 125 | Affirmation in Opposition to Defendant GSY Corp.'s Motion and in Support of Cross-Motion for Summary Judgment, dated May 24, 2012, signed by Shavolian, and filed in the GSY Action |
| 126 | Affirmation in Opposition to Motion and in Support of Cross-Motion, dated March 7, 2014, signed by Castro, and filed in the GSY Action |
| 127 | Emails of (a) September 17, 2010, at 12:18 pm, from Mr. Ofsevit to Shavolian and Mr. Drath with attachment and (b) September 17, 2010, at 2:59 pm, from Ms. Bileydi to Mr. |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

| | | |
|---|---|---|
| | | Ofsevit |
| | 128 | Report of Amount Due, dated September 30, 2010, signed by Mr. Feffer and filed in the foreclosure action commenced by Inland re 241 Property |
| | 129 | Email, dated December 2, 2010, at 2:11 pm, from Ms. Svehla, of Inland, to Shavolian, with attached December 2, 2010 Final Installment Payment letter |
| | 130 | Email of (a) December 3, 2010, at 5:33 pm, from Mr. Drath to Mr. Ofsevit, with attached December 2, 2010 Final Installment Payment letter and (b) December 2, 2010, at 2:11 pm, from Ms. Svehla, of Inland, to Shavolian |
| | 131 | Emails of (a) December 3, 2010, at 3:21 pm, from Mr. Bailey to Mr. Kololik, (b) December 3, 2010, at 4:12 pm, from Deb to Ran, (c) December 8, 2010, at 2:42 pm, from Debbie to Mr. Ofsevit, and (d) December 9, 2010, at 6:53 pm, from Mr. Ofsevit to Mr. Drath |
| | 132 | Assignment of Action, made as of December 10, 2010, signed by Inland and Terrace RE and filed in that foreclosure action commenced by Inland re 241 Property |
| | 133 | Mortgage Assignment, made as of December 10, 2010 and recorded on January 21, 2011 |
| | 134 | Letter, dated January 12, 2011, from Mr. Drath to Mr. Ofsevit |
| | 135 | February 3, 2011 ruling of the New York Supreme Court in that foreclosure action commenced by Inland re 241 Property |
| | 136 | Judgment of Foreclosure and Sale, entered by the New York Supreme Court in that foreclosure action commenced by Inland re 241 Property |
| | 137 | United States District Court, Central District of California Civil Minutes – General, dated May 25, 2011, and entered in the appeal from the |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

| | | |
|---|---|---|
| 1 | | Partial Settlement Approval Order |
| 2 | 138 | Referee's Deed, made July 23, 2011, between Mr. Feffer, as grantor, and Victor At Fifth, LLC, as grantee, and recorded on July 5, 2011 |
| 3 | | |
| 4 | | |
| 5 | 139 | Email string of June 23, 2011 between Mr. Drath and Mr. Holm, and Email string of June 23, 2011, between Marvin Fortgang, Ella Skolnick, Mr. Ofsevit and Mr. Drath |
| 6 | | |
| 7 | 140 | Mortgage Closing Statement from Phillips Nizer, LLP |
| 8 | | |
| 9 | 141 | Email of December 5, 2011, at 10:55 am, from Mr. Drath to Shavolian attaching Closing Statement |
| 10 | | |
| 11 | 142 | Letter, dated October 7, 2011, from Neil Martin of Hill, Farrer & Burrill LLP, to Hazak Associates LLC |
| 12 | | |
| 13 | | |
| 14 | 143 | Unsigned and undated letter from Beshmada (Cicalese) to Hazak |
| 15 | 144 | Summons and Verified Complaint filed in the New York Supreme Court on October 27, 2011, by 241 Delaware and Hazak against Nader & Sons, LLC and Sisko Enterprises, LLC commencing Hazak Nader NY Action |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | 145 | Email of March 19, 2012, at 9:53 am, from Shavolian to Mr. Drath with attached Closing Statement |
| 20 | | |
| 21 | 146 | Emails of (a) March 19, 2012, at 12:53 am, from Shavolian to Mr. Drath with attached Closing Statement and (b) March 19, 2012, at 9:57 am, from Mr. Drath to Shavolian, with the Closing Statement |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | 147 | Email of March 19, 2012, at 10:54 am, from Shavolian to Mr. Drath with attached revised Closing Statement |
| 26 | | |
| 27 | 148 | Email of March 20, 2012, at 7:13 am, from Mr. Drath to Shavolian with further revised Closing Statement |
| 28 | | |

JMBM | Jeffer Mangels
Butler & Mitchell LLP

| | | |
|---|---|---|
| 149 | | Ruling/Final Disposition of New York Supreme Court in Hazak Nader NY Action |
| 150 | | Declaration of Dan Shavolian, filed herein as docket no. 657 |
| 151 | | Declaration of Afshin Hedvat, signed and dated October 8, 2013, and filed herein on January 7, 2014 |
| 152 | | Declaration of David E. Fields, filed herein on January 7, 2014, as doc. No.654 |

JMBM | Jeffer Mangels Butler & Mitchell LLP

**EXHIBIT B**

JOHN P. KREIS (State Bar No. 103737)
JOHN P. KREIS, P.C.
1000 Wilshire Blvd., Suite 570
Los Angeles, CA 90017
Tel: 213.613.1049
Fax:213.330.0258
Email:jkreis@kreislaw.com

CLAUDE CASTRO (State Bar No. 2101)
CLAUDE CASTRO & ASSOCIATES PLLC
444 Madison Avenue, Suite 500
New York, New York 10022
Tel: 212.810.2710
Fax:  212.355.0195
Email:  ccastro@ccastrolaw.com

Attorneys for 241 Fifth Ave. Hotel, LLC, a
Delaware limited liability company, and
Hazak Associates LLC

---

241 FIFTH AVE. HOTEL, LLC, a Delaware
limited liability company, and HAZAK
ASSOCIATES, LLC, a New York limited
liability company,

                              Claimants,

     v.

BRADLEY D. SHARP, TRUSTEE OF THE
BESHMADA LIQUIDATING TRUST, as
successor to Beshmada, LLC,

                      Objecting Party.

---

## LIST OF EXHIBITS[1]

1.     Email dated June 28, 2008 from Rothman to Hakim (Hakim Ex. 1)

2.     Email dated June 30, 2008 from Namvar to Hakim (Hakim Ex. 2)

3.     Email dated July 1, 2008 from Hakim to Shavolian & Namvar (Hakim Ex. 3)

---

[1] All emails refer to the string of emails and attachments.

4.    Email from Namvar date June 30, 2008 to Hakim and Shavolian (Hakim Ex. 4)

5.    Email from Fred Mashian dated July 24, 2008 to Afshin Hakim (Hakim Ex. 5)

6.    Email from Fred Mashian dated July 15, 2008 to Afshin Hakim (Hakim Ex. 6)

7.    Email from Fred Mashian dated July 16, 2008 to Afshin Hakim (Hakim Ex. 7)

8.    New York City Recording and Endorsement Cover Page dated July 24, 2008 (Hakim Ex. 8)

9.    Loan Pledge and Security Agreement dated as of June 12, 2008 (Hakim Ex. 9)

10.   Email from Fred Mashian dated July 24, 2008 to Afshin Hakim (Hakim Ex. 10)

11.   Email dated October 23, 2008 from Dan Shavolian to Ezri Namvar (Hakim Ex. 11)

12.   Email from Ezra Namvar dated August 22, 2008 to Dan Shavolian (Hakim Ex. 12)

13.   Email from Afshin Hakim dated October 7, 2009 to Claude Castro, Dan Sedor and Louis Cicalese (Hakim Ex. 13)

14.   Email dated November 18, 2009 from Dan Sedor to Claude Castro (Hakim Ex. 14)

15.   Email dated June 5, 2008 from Afshin Hakim to Hamid Taba (Hakim Ex. 16)

16.   Email dated June 30, 2008 from Ezri Namvar to Afshin Hakim (Hakim Ex. 17)

17.   Email dated June 30, 2008 from Afshin Hakim to Dan Shavolian (Hakim Ex. 18)

18.   Email from Dan Shavolian dated December 10, 2009 to Claude Castro (Hakim Ex. 19)

19.   Email dated February 5, 2008 from Afshin Hakim to Ezri Namvar, et al (Hakim Ex. 20)

20.   Email from Afshin Hakim dated April 6, 2009 to Bruce Leuzzi (Hakim Ex. 21)

21.   Email from Bruce Leuzzi dated April 7, 2009 to Afshin Hakim (Hakim Ex. 22)

22.   Email from Afshin Hakim dated July 2, 2009 regarding "Joint Stipulation" (Hakim Ex. 23)

23.   Email from Afshin Hakim dated July 13, 2009 from Afshin Hakim regarding Inland Mortgage loan (Hakim Ex. 25)

24.   Email from Dan Shavolian dated July 14, 2009 to Afshin Hakim (Hakim Ex. 26)

25.   Email from Dan Shavolian dated August 17, 2009 to Afshin Hakim (Hakim Ex. 27)

26.    Email from Afshin Hakim dated September 9, 2009 to Claude Castro (Hakim Ex. 29)

27.    Partial Settlement Agreement dated as of January 18, 2010 (Raanan Ex. 1)

28.    Email from Uzzi Raanan dated May 3, 2010 to Ron Bender (Raanan Ex. 6)

29.    Email from John Kreiss dated May 26, 2010 to Uzzi Raanan (Raanan Ex. 9)

30.    Email from Kay Hakakian dated May 28, 2010 to Uzzi Raanan (Raanan Ex. 11)

    **OBJECTION BY SHARP:**   Hearsay and irrelevant.

31.    Email from Uzzi Raanan dated May 28, 2010 to Kay Hakakian (Raanan Ex. 12)

32.    Email from Kay Hakakian dated May 27, 2010 to Uzzi Raanan (Raanan Ex. 13)

33.    Email from Uzzi Raanan dated May 27, 2010 to John Kreis (Raanan Ex. 14)

34.    Email from John Kreis dated June 25, 2010 to Uzzi Raanan (Raanan Ex. 17)

35.    Email from Uzzi Raanan dated June 25, 2010 to John Kreis (Raanan Ex. 18)

36.    Email from Uzzi Raanan dated June 26, 2010 to John Kreis (Raanan Ex. 19)

37.    Email from Kay Hakakian dated January 1, 2012 to Uzzi Raanan

    **OBJECTION BY SHARP:**   Hearsay and irrelevant.

38.    Email from Ron Bender dated February 26, 2010 to Uzzi Raanan

    **OBJECTION BY SHARP:**   Hearsay and irrelevant.

39.    Email from Uzzi Raanan dated April 6, 2010 to John Kreis

40.    Email from Uzzi Raanan dated May 24, 2010 to John Kreis (Raanan Ex. 7)

41.    Email from John Kreis dated May 24, 2010 to Uzzi Raanan (Raanan Ex. 8)

42.    Email from Uzzi Raanan dated June 3, 2010 to Ron Bender (Raanan Ex. 15)

43.    Email from Kay Hakakian dated June 8, 2010 to Ron Bender (Raanan Ex. 16-1)

44.    Email from Uzzi Raanan dated June 22, 2010 to Ron Bender (Raanan Ex. 16-A)

45.    Email from Uzzi Raanan dated July 11, 2011 to Kay Hakakian (Raanan Ex. 20)

46.    Email from Kay Hakakian dated July 11, 2011 to Uzzi Raanan (Raanan Ex. 21)

47.    Limited Liability Company Agreement of 241 Fifth Ave. Hotel LLC

48.    Inland Mortgage and Note

49.   Notice of Default dated May 14, 2010 (Cicalese Ex. 9)

50.   Email from Afshin Hakim dated August 17, 2009 regarding Louis Cicalese's designation
      as manager of Beshmada

51.   Email from Afshin Hakim dated September 23, 2009 to Claude Castro (Cicalese Ex. 5)

52.   Email from Dan Sedor dated November 18, 2009 to Claude Castro (Cicalese Ex. 6)

53.   Email from Dan Shavolian dated May 24, 2010 to Louis Cicalese

54.   Letter from Dan Shavolian dated May 18, 2010 to Beshmada LLC and Ezri Namvar
      (Cicalese Ex. 10)

55.   Letter dated February 12, 2009 to Beshmada LLC from Dan Shavolian (Cicalese Ex. 11)

56.   Report of David Fields (Fields Ex. 4)

57.   Letter from Vision Capital LLC to 241 Fifth Ave. Hotel LLC

58.   Emails between Dan Shavolian and Afshin Hakim re: consent (Shavolian Exs. 35, 36, 37)

59.   Email from Ezri Namvar dated July 18, 2008 to Dan Shavolian (Shavolian Ex. 39)

60.   Email from Dan Shavolian dated July 21, 2008 to Ezri Namvar regarding Financing
      Memo from Carlton (Shavolian Ex. 40)

61.   Letters from Inland Mortgage regarding extension (Shavolian Ex. 41)

62.   UCC-1 (Shavolian Ex. 42)

63.   Email from Ellen Jackson dated August 20, 2008 to Dan Shavolian (Shavolian Ex. 47)

64.   Notice of Default dated August 28, 2008 (Shavolian Ex. 52)

65.   Letter from Inland Mortgage dated September 2008 (Shavolian Ex. 53)

66.   Email exchange with Inland Mortgage (Shavolian Ex. 54)

67.   Proposed budgets (Shavolian Ex. 56)

68.   Email from Inland Mortgage dated October 1, 2008 (Shavolian Ex. 58)

69.   Email from Dan Shavolian to Ezri Namvar stating Pledge of Beshmada interest is illegal.
      (Shavolian Ex. 59)

70.   Email exchange with Inland Mortgage re: restructuring of loan (Shavolian Ex. 60)

4

71.  Infinity Funding Group Letter proposal of November 10, 2008 (Shavolian Ex. 62)

72.  Madison Title Agency LLC's letter of October 22, 2009 and attachments

73.  Default Letter from Inland Mortgage dated December 8, 2008 (Shavolian Ex. 64)

74.  Emails between Dan Shavolian and Jack Hazan and Inland Mortgage dated November 14, 2008 (Shavolian Ex. 65)

75.  Email from Inland Mortgage dated January 12, 2009 to Dan Shavolian (Shavolian Ex. 66)

76.  Email from Inland Mortgage dated April 3, 2009 to Dan Shavolian (Shavolian Ex. 70)

77.  Email from Dan Shavolian  to Louis Cicalese re: commencement of foreclosure action (Shavolian Ex. 78)

78.  Email from Dan Shavolian dated November 16, 2009 to Louis Cicalese (Shavolian Ex. 86)

79.  Partial Settlement Agreement (Shavolian Ex. 88)

80.  Order Granting Approval of Partial Settlement Agreement (Shavolian Ex. 89)

81.  Email from Dan Shavolian to Cicalese re: Vision proposal (Shavolian Ex. 91)

82.  Letter from 241 Fifth Ave. Hotel LLC to Beshmada dated May 18, 2010 (Shavolian Ex. 92)

83.  Email from Louis Cicalese dated May 24, 2009 (Shavolian Ex. 93)

84.  Email exchange with Louis Cicalese re: Vision proposal (Shavolian Ex. 94)

85.  Letter from Beshmada to Dan Shavolian dated June 9, 2009 (Shavolian Ex. 95)

86.  Vision Capital letter to Dan Shavolian dated June 16, 2010 (Shavolian Ex. 96)

87.  Letter from Dan Shavolian to Louis Cicalese dated June 21, 2010 (Shavolian Ex. 97)

88.  Letter from Beshmada to Dan Shavolian dated June 22, 2010 (Shavolian Ex. 98)

89.  Letter from Dan Shavolian to Louis Cicalese dated June 22, 2010 (Shavolian Ex. 99)

90.  Email and letter from Beshmada dated June 28, 2010 (Shavolian Ex. 100)

91.  Foreclosure Deed (Shavolian Ex. 108)

92.    Letter from Vision to 241 Fifth Ave. Hotel dated June 9, 2009

93.    Foreclosure Judgment (Shavolian Ex. 105)

94.    Decision of Supreme Court, New York County, dated July 1, 2012

95.    Kimpton Budget (Fields Ex. 5)

96.    Email exchange between Dan Shavolian and Frances Panico dated January 22, 2009

97.    Email from Frances Panico to Dan Shavolian dated February 5, 2009

98.    Email from Frances Panico to Dan Shavolian dated March 11, 2009

99.    Expert Report of David Fields (Fields Ex. 4)

100.    Declaration of Philip Narotsky (docket no. 656)

**OBJECTION BY SHARP:**  Witness must be available for cross-examination or declaration should be striken.

Dated:  January 20, 2015                    CLAUDE CASTRO & ASSOCIATES PLLC
                                            JOHN P. KREIS, PC


                                            By: _____

                                            CLAUDE CASTRO/JOHN KREIS,
                                            Attorneys for 241 Fifth Ave. Hotel, LLC, a Delaware
                                            limited liability company, and Hazak Associates LLC

6

**EXHIBIT C**

**SHARP'S WITNESS LIST**

Sharp intends to have the following witnesses testify at the trial of this matter:

1.      <u>Louis Cicalese</u>.  Mr. Cicalese can be contacted through counsel for Sharp and resides in Pennsylvania.  Mr. Cicalese is the former manager of Beshmada and was a member of 241 Delaware's Executive Committee.  Mr. Cicalese will testify concerning (a) the facts, whether in dispute or not, set forth in the this Pre-Trial Stipulation, (b) Beshmada's actions with respect to 241 Delaware, (c) the decisions made by Beshmada with respect to 241 Delaware and the basis therefor, (d) the correspondence and emails between Mr. Cicalese and/or Beshmada, on the one hand, and Shavolian and/or Hazak and/or 241 Delaware, on the other hand, re 241 Delaware, (d) communications between Mr. Cicalese and/or Beshmada, on the one hand, and Shavolian and/or Hazak and/or 241 Delaware, on the other hand, re 241 Delaware, (e) Mr. Cicalese's/Beshmada's actions concerning 241 Delaware, Shavolian, Hazak, Nader & Sons, LLC and Sisko Enterprises, LLC and (f) the transaction set forth in the "Partial Settlement Agreement."

2.      <u>Uzzi Raanan</u>.  Mr. Raanan is an attorney and is counsel for Neilson.  Mr. Raanan is a partner in the law firm of Danning, Gill, Diamond & Kollitz, 1900 Avenue of the Stars, 11th Floor, Los Angeles, California 90067.  Mr. Raanan will testify concerning his (a) communications and discussions with Castro, including the May 15, 2009 telephone conversation between Mr. Raanan and Castro, (b) his communications and discussions with Shavolian and Castro, including that May 18, 2009 telephone conversation between Raanan, Shavolian and Castro wherein Raanan shall testify that Shavolian told him the following: (i) it would take about $1,000,000 in renovations to make the building habitable and be able to generate gross annual income of $500,000, (ii) that if 241 Delaware can hold on to the building for a year or two, 241 Delaware could find some equity, (iii) that the 241 Property could not, at that time, be sold for an amount in excess of the secured debt and claims, and (iv) Shavolian does not have the funds to buy out Beshmada or continue to make debt service payments.  Mr. Raanan will also testify concerning a May 15, 2010 meeting he attended where Shavolian, Castro, Cicalese and Neilson were also present.

3.    <u>Dan Shavolian</u>.  Sharp reserves the right to call Mr. Shavolian as an adverse witness concerning the proof of claim at issue, including (a) the facts, whether in dispute or not, set forth in the this Pre-Trial Stipulation, (b) Beshmada's, Hazak's and Shavolian's actions with respect to 241 Delaware, (c) the decisions made by Beshmada, Hazak and Shavolian with respect to 241 Delaware and the basis therefor, (d) the correspondence and emails between Mr. Cicalese and/or Beshmada, on the one hand, and  Shavolian and/or Hazak and/or 241 Delaware, on the other hand, re 241 Delaware, (d) communications between Mr. Cicalese and/or Beshmada, on the one hand, and Shavolian and/or Hazak and/or 241 Delaware, on the other hand, re 241 Delaware, (e) Mr. Cicalese's/Beshmada's and Shavolian's/Hazak's actions concerning 241 Delaware, Shavolian, Hazak, Nader & Sons, LLC and Sisko Enterprises, LLC and (f) the transaction set forth in the "Partial Settlement Agreement."

**EXHIBIT D**

JOHN P. KREIS (State Bar No. 103737)
JOHN P. KREIS, P.C.
1000 Wilshire Blvd., Suite 570
Los Angeles, CA 90017
Tel: 213.613.1049
Fax:213.330.0258
Email:jkreis@kreislaw.com

CLAUDE CASTRO (State Bar No. 2101)
CLAUDE CASTRO & ASSOCIATES PLLC
444 Madison Avenue, Suite 500
New York, New York 10022
Tel: 212.810.2710
Fax:  212.355.0195
Email:  ccastro@ccastrolaw.com

Attorneys for 241 Fifth Ave. Hotel, LLC, a
Delaware limited liability company, and
Hazak Associates LLC

---

241 FIFTH AVE. HOTEL, LLC, a Delaware
limited liability company, and HAZAK
ASSOCIATES, LLC,   a New York limited
liability company,

                    Claimants,

        v.

BRADLEY D. SHARP, TRUSTEE OF THE
BESHMADA LIQUIDATING TRUST, as
successor to Beshmada, LLC,

                    Objecting Party.

---

## CLAIMANTS' WITNESS LIST

The Claimants plan to call the following witnesses at the trial of this matter:

1.    <u>Dan Shavolian</u>.  Mr. Shavolian will testify with regard to his   relationship to Hazak and 241 Fifth Ave. Hotel, LLC; he will testify the status of the mortgage on the premises owned by 241 Fifth Ave. Hotel LLC; he will testify as to   his efforts to raise capital on behalf of 241 Fifth Ave. Hotel LLC in order to maintain the property and the mortgage; he will testify about his efforts to restructure the Inland Mortgage; he will testify that his efforts to refinance the Inland Mortgage; he will testify as to his communications, oral and written with Ezri Namvar and Louis Cicalese and others related to or affiliated with Beshmada LLC "Beshmada"); he will testify as to the request for consent to the pledge and/or assignment of Beshmada's interest in241 Fifth Ave. Hotel LLC to a third party; he will testify as to 241 Fifth Ave. Hotel LLC's inability to restructure and/or refinance the mortgage due to the conduct of Beshmada, Namvar and his related entities and others affiliated with or acting on behalf of Beshmada; he will testify as to the ability to rent the premises owned by 241 Fifth Ave. Hotel LLC; he will testify as to the development possibilities of the premises owned by 241 Fifth Ave. Hotel LLC; he will testify as to his communications with representatives of Inland Mortgage with regard to Inland Mortgage and with   regard to the restructuring and/or refinancing of the Inland Mortgage; he will testify as to his conversations with other potential lenders with regard to the restructuring and/or refinancing of Inland Mortgage; he will testify with regard to his efforts to arrange for the purchase of the Inland Mortgage on behalf of 241 Fifth Ave. Hotel LLC; he will testify as to his effort to have Inland Mortgage forbear on the foreclosure on the p remises; he will testify as to his efforts to avoid the personal guarantee signed by principals of Hazak and Beshmada; he will testify as to the rental value of he premises at all relevant times; he will testify as to the value of the real property owned by 241 Fifth Ave. Hotel LLC during all relevant times; he will testify about his offer to Mr. Cicalese and to the trustees to participate in the restructuring

of the loan and/or the purchase of the loan; he will testify as to Beshmada's and the trustees' refusal to restructure and/or to refinance the Inland Mortgage; he will testify as to the offers that he made to purchase Beshmada's interest in  241 Fifth Ave. Hotel LLC; he will testify in more general detail with regard to  241 Fifth Ave. Hotel LLC's total inability to restructure and/or refinance the mortgage due to the conduct and actions of Beshmada, its  manager(s)  and the actions of the Trustees.

      2.    <u>David Fields</u> will testify with regard to the expert report that he prepared with regard   to the value of the premises owned by 241 Fifth Ave. Hotel LLC; he will testify that the value of the real property at all relevant times was in excess of $30,000,000; he will testify that financing was available at all relevant times for the subject premises; and he will testify with regard to all of the findings and conclusions set forth in his report.

      3.    <u>Bruce Leuzzi</u>  Bruce Leuzzi is an attorney duly admitted to practice before the Courts of the State of New York; he will testify with regard to his representation of 241 Fifth Ave..Hotel LLC; he will testify as to his communications with regard to proposed pledge of Beshmada's interest in 241 Fifth Ave. Hotel LLC to third parties; he will testify as to his communications with Inland Mortgage and its representatives; he will testify as to his communications with Afshin Hakim.

      4.    <u>Afshin Hedvat</u> will testify with regard to his relationship to Vision Capital LLC; he will testify with regard to the offer made by Vision Capital to restructure and/or refinance the Inland Mortgage loan; he will testify that Vision Capital could not proceed with any refinancing or restructuring of the Inland Mortgage due to the fact that 241 Fifth Ave. Hotel LLC could not provide the proper consent for such a loan and/or refinancing; he will   testify that Vison Capital would do any offer to restructure and/or refinance the Inland Mortgage or offer a new loan due to title issues and uninsurability of title caused by the actions of Beshada, its managers and/or the   trustees.

      5.    <u>Philip Narotsky</u> Mr. Narotsky is a   principal of Counsel Abstract Corp.,

3

an abstract company located in New York City which provides title insurance services; he will testify that based upon applicable underwriting practices, proper title insurance practice and applicable New York Law and real estate practices in New York, that any refinancing and/or restructuring and/or sale of the premises owned by 241 Fifth Ave. Hotel LLC would not be insured by any title company in New York State due to the fact that 241 Fifth Ave. Hotel LLC could not provide consent from all members of that entity; he will testify that the pledge and/or assignment of Beshmada's interest to third parties without consent of all members would prevent the members of 241 Fifth Ave Hotel LLC from being able to provide the requisite consent to the refinancing and/or restructuring and/or sale of its premises; he will testify generally as to the pledgees' of Beshmada's interest in 241 Fifth Ave Hotel LLC affect on 241 Fifth Ave Hotel LLC's ability to provide the requisite consent to a refinance and/or restructuring and/or sale of the premises; he will testify as to the effect of the UCC-1 filing made by GSY.

      6.    <u>Frances Panico</u>  is a representative of Inland Mortgage.  She will testify as to her communications with Dan Shavolian with regard to the Inland Mortgage; she will testify about the restructuring and/or refinance of the Inland Mortgage; she will testify about Inland Mortgage relationship with 241 Fifth Ave. Hotel LLC.

      7.    <u>Afshin Hakim</u> is an attorney duly admitted to practice in the State of California; Mr. Hakim will be called as an adverse witness to testify as his position as   general counsel for Namco Capital Group and his position as counsel for Beshmada and Louis Cicalese; Mr. Hakim will testify as to his participation in the loan   transaction between Namco Capital Group Inc. and Nader & Sons and Sisko (the "Lender"); he will testify that with regard to the Loan Pledge and Security Agreement entered into by those parties; he will testify as to knowledge and familiarity with the terms and conditions of the Inland Mortgage and of the Operating Agreement of 241 Fifth Ave. Hotel LLC; he will testify that he was aware that Beshmada could not pledge, assign and/or sell any of its interests in 241 Fifth Ave. Hotel LLC without the consent of all other members of 241 Fifth Ave. Hotel LLC; he will testify that he

4

advised Namco Capital Group and Mr. Ezri Namvar  that Beshmada could not pledge any of its interest in 241 Fifth Ave. Hotel LLC  without the consent of the other  members of 241 Fifth Ave. Hotel LLC; he will testify that the Lender  was ware that the Operating Agreement of 241 Fifth Ave. Hotel LLC required the consent of all members of 241 Fifth Ave. Hotel LLC for the pledge and/or assignment of any membership interest in 241 Fifth Ave. Hotel LLC to any third party; he will testify that the Lender was aware that  Behsmada could not pledge and/or assign its interest in 241 Fifth Ave. Hotel LLC without the consent of all members of 241 Fifth Ave. Hotel LLC; ; he will testify that the Lender funded the  loan at issue prior to  the execution of the Loan Pledge and Security Agreement and without obtaining  the consent of all members of 241 Fifth Ave. Hotel LLC; in fact he will testify that he, Mr. Ezri,  the Lender and the Lender's counsel  all aware that the pledge made by Beshmada of its interest in 241 Fifth Ave. Hotel LLC was improper and contrary to terms of the Operating Agreement of 241 Fifth Ave. Hotel LLC and that such pledge constituted a default under the Inland Mortgage; he will testify that Mr. Ezri advised the Lender and its principals that  Inland Mortgage would not know of Beshmada's pledge of its interest in 241 Fifth Ave. Hotel LLC  since  the pledge would not be recorded; he will testify that he was provided  documentation with regard to  Dan Shavolian's/241 Fifth Ave. Hotel LLC's  efforts to restructure the Inland Mortgage; he will testify that he was aware that the Inland Mortgage was in foreclosure; he will testify that Beshmada made the decision not to defend the foreclosure action and refused to retain counsel to appear on its behalf in the foreclosure action; he will testify as to his relationship to Beshmada, Louis Cicalese, Namco Capital, Ezri Namvar and his related entities, and the actions that he took on behalf of the foregoing entities and individuals.

8.    Uzzi Raanan will be called as an adverse witness and   will testify with regard to his representation of the trustees and/or entities in this proceeding; he will testify as to his communications with Kay Hakakian and Nader Hakakian, Nadar & Sons LLC and Sisko; he will testify with regard to a participation and the negotiations and the finalization of the Partial

5

Settlement Agreement; he will testify as to his   discussions with Kay Hakakian and/or Nader

Hakakian with regard to the sale and/or assignment of Beshmada's interest in 241 Fifth Ave.

Hotel LLC to the Hakakians and/or their entity; he will testify with regard to Dan Shavolian's

offers the purchase of Beshmada's interest for an amount higher than the amount offered by the

Hakakians and/or   their entities; and he will be questioned generally with regard to his actions

with regard the underlying transactions.

      9.    The Claimants reserve the right to call Louis Cicalese as an adverse

witness. His testimony will consist of rebuttal testimony to the Objecting Party.


Dated:   January 20, 2015


          CLAUDE CASTRO & ASSOCIATES/JOHN P. KREIS, PC


By: _____

         CLAUDE CASTRO/JOHN KREIS,
         Attorneys for 241 Fifth Ave. Hotel, LLC, a Delaware
         limited liability company, and Hazak Associates LLC

6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067-4308

A true and correct copy of the foregoing document entitled (*specify*): ***JOINT PRE-TRIAL STIPULATION*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) *January 20, 2015*, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
**See NEF for confirmation of electronic transmission to the U.S. Trustee and any trustee in this case, and to any attorneys who receive service by NEF.**

⊠ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:  On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) *January 20, 2015*, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Served by Overnight Mail:**
Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| January 20, 2015 | Wilma Escalante | *(signature)* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**

### *ADDITIONAL SERVICE INFORMATION:*

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Gillian N Brown gbrown@pszjlaw.com, gbrown@pszjlaw.com
- Richard Burstein rburstein@ebg-law.com, ecf@ebg-law.com
- Brian L Davidoff bdavidoff@greenbergglusker.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- H Alexander Fisch afisch@stutman.com
- Thomas M Geher tmg@jmbm.com, we1@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- Stanley E Goldich sgoldich@pszjlaw.com
- David Gould dgould@gglawllp.com
- Steven T Gubner sgubner@ebg-law.com, ecf@ebg-law.com
- William W Huckins whuckins@allenmatkins.com, clynch@allenmatkins.com
- David S Kadin dsklaw@earthlink.net
- Talin Keshishian tkeshishian@ebg-law.com, ecf@ebg-law.com
- Stuart I Koenig Skoenig@cmkllp.com
- John P Kreis jkreis@kreislaw.com, j.kreis@ca.rr.com
- Jeffrey A Krieger jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Charles Liu cliu@marshackhays.com, ecfmarshackhays@gmail.com
- Melissa Davis Lowe mdavis@shbllp.com, lverstegen@shbllp.com
- Ron Maroko ron.maroko@usdoj.gov
- Alexis M McGinness amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- David W. Meadows david@davidwmeadowslaw.com
- Ethan B Minkin ethan.minkin@kutakrock.com
- Susan I Montgomery susan@simontgomerylaw.com
- Darren B Neilson dneilson@ebg-law.com, darrenneilson@gmail.com
- Michael S Neumeister mneumeister@omm.com
- David Norouzi david@norouzi.us
- Walter K Oetzell woetzell@dgdk.com, DanningGill@gmail.com;woetzell@ecf.inforuptcy.com
- Robert B Orgel rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay mpagay@pszjlaw.com, mpagay@pszjlaw.com
- David M Poitras dpoitras@jmbm.com, bt@jmbm.com;vr@jmbm.com;dmp@ecf.inforuptcy.com
- Samuel Price sprice@pooleshaffery.com
- Uzzi O Raanan uor@dgdk.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Christopher S Reeder csreeder@rkmc.com
- Henley L Saltzburg hls@srblaw.com, ar@srblaw.com;lb2@srblaw.com
- Joel G Samuels jsamuels@sidley.com
- Robert M Saunders rsaunders@pszjlaw.com, rsaunders@pszjlaw.com
- Kambiz J Shabani kevin@shabanipartners.com
- David B Shemano DBShemano@rkmc.com
- Michael N Sofris michaelsofris@gmail.com, filmlawyer@aol.com
- Robyn B Sokol ecf@ebg-law.com, rsokol@ebg-law.com
- Sam Tabibian sam.tabibian@gmail.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Elissa A Wagner ewagner@pszjlaw.com
- Michael A Wallin mwallin@slaterhersey.com, mrivera@slaterhersey.com
- Howard J Weg HJWeg@rkmc.com
- Michael H Weiss mw@weissandspees.com, lm@weissandspees.com
- Dean A Ziehl dziehl@pszjlaw.com, dziehl@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**